THE STATE OF FLORIDA, EX REL., D. A. BOYD, ET AL., RE-
LATORS, VS. BENJAMIN A. DEAL, ASSESSOR OF REVENUE,
RESPONDENT.

1. The Governor acts as a part of the law making power of the State
in approving a bill passed by the Legislature.    The function is
not of an executive but of a legislative character.

2. The bill as presented to the Governor for his action should be the
same in its legal effect as to the same matter as it was when it
passed the two houses of the Legislature.    If subsequent to its
passage by such houses, and before its approval by the Govern-
or, provisions have been inserted in it which change the legal
effect of it as to a matter regulated by it before such inser-
tion, the entire approved bill will be void. If, however, the
genuine provisions are distinct from and independent of the
spurious, it seems that they will not be affected by the latter.

3. A bill to revoke and abolish the existing municipal government of
Palatka and to reorganize its government, (chapter 5780, Laws of
1887,) and containing thirty one sections, passed the Senate.   In
the House of Representatives it was amended by striking out
everything after the enacting clause and inserting in lieu thereof
eight new sections.   This amendment was concurred in by the
Senate.   Sections 9 to 31, inclusive, of the original bill, were en-
rolled with the eight amendatory sections, and numbered in the
enrollment as they were originally, and the amendatory sections
were numbered from 1 to 8, consecutively.   In this condition the
bill was signed by the officers of the Senate and House of Rep-
resentatives, and then presented to the Governor, who approved
it.   The provisions of the spurious sections as to some matters
covered by the genuine sections are different in their legal effect
from those of the genuine sections ; *Held*, The entire bill is of
no effect as a law.

This is a case of original jurisdiction.

The facts of the case are stated in the opinion.

*Calhoun & Davis*, for Relators.

*Sumner C. Chandler*, for Respondent.

MR. JUSTICE RANEY delivered the opinion of the court:

A bill to be entitled " An act to revoke and abolish the present municipal government of the town or city of Palatka, and to reorganize a city government for the said town or city," and containing thirty one sections, numbered from 1 to 31, consecutively, passed the Senate at the last session of the Legislature, and in this condition reached the House of Representatives, where it was amended by striking out everything after the enacting clause and inserting in lieu of the matter so struck out, eight new sections. This amendment was concurred in by the Senate.   In enrolling the bill the amendatory sections were substituted for the first eight original sections of the bill, and such amendatory sections and the twenty-three sections, numbered from 9 to 31, consecutively, of the original bill, were enrolled, and in this condition the enrolled bill was signed by the officers of the Senate and House of Representatives, when it was carried to the Governor, who approved it on the 3d day of June.

Considering the bill as a whole, though it has the sanction of the Governor and is certified to by the officers of the two houses, yet, as is conclusively shown by the journals, it has never been adopted by the two houses referred to. Cooley C. L., 163-4.

The question presented for decision is whether any part of this ostensible statute, as it appears in both the enrolled and the printed laws, is valid.

In Jones vs. Hutchinson, 43 Ala., 721, the facts were that a bill providing, " that all existing judgments of courts of record in this State, and all which may hereafter be rendered in said courts of record be, and the same are, liens upon all of the property of the defendants therein, which

is subject to levy and sale," originated in and was passed by the Senate. In the House of Representatives the following amendment was adopted : "Provided that the lien shall extend only to property in the county where the judgment was rendered, and in the county where it is recorded in the office of the Probate Court," and as thus amended the bill passed the House, but the Senate refused to concur in the amendment, and a committee of conference was appointed by the two houses. This committee reported against the proviso, and recommended that the bill should be passed without it, and this report was concurred in by the House, and the Senate was notified of the House having receded from its amendment.

The bill was never enrolled as it passed ; but in making what was intended to be an enrolled copy, to be signed by the presiding officers of the two houses, and to be presented to the Governor, the *proviso* was also enrolled as a part of the bill, and in this shape it was signed by the Speaker of the House, and President of the Senate, and approved by the Governor.

It is apparent that the bill, as it was signed by the officers of the two houses and approved by the Governor, made all existing and future judgments of courts of records, liens on the property of the defendants only in the county in which the judgment was or should be rendered, and in those counties where it should be recorded in the office of the Probate Court, while such bill, as it actually passed the two houses, made judgments of courts of record liens on all property of the defendants in any county in the State, whether the judgment had been recorded in the county or not.

Nothing could be plainer than that the Governor had acted on and approved a bill whose provisions were in legal effect one thing, whereas the bill which had passed the two

houses of the Legislature was entirely different in its legal effect, or, as stated by the Supreme Court of Alabama, the bill which was signed by the officers of the two houses and approved by the Governor, "was not the bill which had been passed by the two houses."

The whole bill was held to be of no validity, the court saying they were not to be understood as deciding that an error of this character would vitiate the whole act, where separate and distinct matter from that of the bill was inadvertently inserted and did not affect the original bill as passed, or change its substance or legal effect.

In Moody vs. State, 48 Ala., 115, where certain material amendments had been added to the bill after its introduction, but they were omitted in the enrollment, and did not appear in the enrolled bill, as signed by the officers of the two houses and the Governor, the bill was held to be of no effect as a law.

In Berry vs. Baltimore & Drum Point R. R. Co., 41 Md., 446, the facts were as follows: In 1868 a statute was passed incorporating the railroad company, and the 19th section of the act provided that if the company did not complete the road within four years from the time of *commencing its construction*, the charter was to be null and void. The commencement was made in 1873, within the time prescribed by the act, and, consequently, as the charter stood, the company had till sometime in 1877 to complete the road.

In 1874 an amendatory act was passed, which, in its third section, recited by way of preamble, that it was feared that the time allowed by the charter for the completion of the road was insufficient, and this third section, as enrolled and approved by the Governor, and as *printed* in the volume of laws, provided that if the road was not finished in five years from January, 1870, (thus diminishing instead of increasing

the time allowed by the original act,) the charter and all amendments should be void. Upon an examination of the engrossed bill, as it was finally acted upon by the two houses of the Legislature, with the endorsements thereon by the proper officers as to the action of the houses, and the journals of both houses, it appeared beyond question that the extension of time for the completion of the road, as provided in the third section of the bill, was five years from the first day of January, 1875. The decision was that as the third section of the amendatory act of 1874, as sealed and approved by the Governor, was materially different from the section as it passed the two houses of the Legislature, it was void; but that as the other portions of said amendatory act, exclusive of said third section, were regularly passed by the Legislature and approved by the Governor, and were (as expressed in the head-note) entirely distinct and severable from the third section, they were valid and effective.

The material difference between the third section of the amendatory act as it passed the two houses, and as it was when approved by the Governor, was occasioned by omitting the word " five " after the word " seventy," in copying or enrolling the bill for signature and approval, and on account of this omission and material difference the court declared the particular section null and void, and held that the 19th section of the original statute was left unaffected, and prescribed the time for completion of the road, viz: Four years from the time of commencement in 1873.

What the provisions of the other sections of the amendatory act of 1874 were does not appear in the report of the case. The doctrine, however, upon which they were held good, was that they were " entirely distinct and severable from that which is void."

In State vs. Platt, 2 So. Ca., (N. S.) 150, it appears that

the 19th section of " An act to revise, simplify and abridge the rules, practice, pleadings and forms of courts in this State " as enrolled and signed by the presiding officers of the Senate and House of Representatives and approved by the Governor, provided, *inter alia*, that the courts for the county of Barnwell should be held at *Barnwell*, but the legislative journal showed that the section, as it actually passed the two houses, provided that the courts should be held at *Blackville*. " The consequence is," says the opinion, " that so much of section 19 as attempts to designate a place of holding said court is without the force of law. In other words, the legal effect is the same as if an independent act, making Blackville the place of holding the courts, had passed the General Assembly, and a totally different act, making Barnwell the place, had been submitted to the Governor in lieu of that passed by the General Assembly." In regard to the effect of the change made in section 19 upon the remainder of the bill, it is remarked by the court that " from the standpoint of legal construction we must regard it as a matter of indifference so far as the *general scope* of the act is concerned, whether the selection fell upon Barnwell or Blackville, or whether the subject was included or excluded from the bill. It is evident that a bill having in contemplation a *complete change* in the *modes and forms of legal procedure*, could not be prejudicially affected in its general usefulness, and perverted from the object it was intended to secure, by uncertainty as to whether the Circuit Courts for Barnwell county were to be held at the one place or at the other."

The ground upon which the invalidity of the proviso in the first of the above cases and of the sections in the others is put is that the same subject matter had not been acted upon by both branches of the law making power.

There is no doubt as to the absolute invalidity of section

9 and all subsequent sections of the ostensible statute before us. They are without the sanction of the two houses of the Legislature.

The validity of the first eight sections must be passed upon.

"It will," says Judge Cooley, (Const. Limis., 211, *et seq.*, 5th Ed., or 177 of 3d Ed.,) "sometimes be found that an act of the Legislature is opposed in some of its provisions to the Constitution, while others standing by themselves would be unobjectionable. So the forms observed in passing it may be sufficient for some of the purposes sought to be accomplished by it but insufficient for others. In any such case the portion which conflicts with the Constitution, or in regard to which the necessary conditions have not been observed, must be treated as a nullity. Whether the other parts of the statute must be adjudged void because of the association, must depend upon a consideration of the *object* of the law, and in *what manner*, and to *what extent* the unconstitutional portion affects the remainder."

In the case before us the fact is that the 9th and subsequent sections have received the sanction of the Governor alone; and some consideration of the provisions of the two sets of sections is necessary.

The first section of the act as enrolled and printed provides that within fourteen days after it becomes a law the City Council of Palatka shall divide the city into four wards, and that thereafter voters shall be allowed to vote only in the wards they reside in. Section 2 provides that at the next annual election held in the city there shall be chosen two Aldermen from each ward, and the voters of each ward shall vote for only two Aldermen from their ward; and at the same time there shall be chosen by all the voters of the city one Alderman at large, to be voted for by all voters without regard to wards. Of the two-ward Aldermen chosen

at the first election for each ward, the one receiving the highest vote is to hold his office for two years and the other to hold for one year, and at each subsequent election one Alderman is to be chosen for each ward and his term is to be two years. The Alderman at large is to be elected annually.

Provisions upon the above subjects are also to be found in sections 20 and 14. Section 20 provides that the Council of Palatka, preparatory to organization under this act, shall during the year 1887 divide the city into not less than four nor more than ten wards, and appoint polling places and provide for holding elections therein, and within four days after the election the Mayor and Councilmen and officers to be elected shall qualify, and thereafter elections shall be held at such times and places as the Mayor and Council may ordain, consistently with this act. Section 14 ordains that the Council shall be composed of not more than nine Councilmen, and that they shall be elected for a term of two years at a general election by the qualified electors of the city, and that not more than two residing in any one ward shall be eligible. That at the first election four of the Councilmen shall be elected for one year and the others for two years. The four receiving the highest number of votes at the first election to hold for the long term and those receiving the next highest to hold for the short term.

As striking as are the dissimilarities in the above provisions of the sections which were adopted by the Legislature, and those which were not, there are still others to be noticed. The purpose and effect of the first eight sections were that they should become operative as to the existing government or officials of Palatka within the ordinary time prescribed by the Constitution for a statute to go into effect. On the other hand, section 30 provides that " the present city or town government of Palatka shall not be

revoked, abolished or impaired until the Mayor and City Council, or a majority of said councilmen, shall be elected and qualified under this act." The title of the act is, " An Act to revoke and abolish the present municipal government of the town or city of Palatla, and to reorganize a city government for the said town or city." It is apparent that the purpose of section 30 was (and its effect would be, if valid,) that the existing government under the general municipal law should not be affected until the juncture mentioned in such section should be reached.

The 5th section authorizes the council to levy taxes to the *maximum* extent of two per cent. of the assessed value of the property in the city—and section 6 authorizes the issue of bonds for sanitary and municipal purposes by the council, with the approval of a majority of the registered voters. Section 17, on the other hand, allows taxation for ordinary municipal purposes to the extent of *two and a half* per cent. of the value of the property, and such purposes are declared to inclu le all municipal purposes except. interest on debt, and tax for sinking fund and a tax to pay any judgment against the city or levied in obedience to a mandamus ; for these additional levies may be made.

The 8th section reserves to or confers upon the city all the rights, powers and privileges provided for by the general municipal incorporation statutes, not inconsistent with the provisions of the preceding seven sections. There is much legislation in the sections following the eighth as to matters concerning which no provision is made by the first eight sections—and such legislation is entirely inconsistent with the provisions of the general incorporation law on similar subjects. Section 16 gives the Mayor and Council power to create such officers (other than those specially provided for by the act), and to provide for their appointment or election, but their " compensation and terms of service

shall be fixed before their election, and the compensation shall not be increased or diminished during their term of office." Admitting that the power to create the offices is implied by the authority given in the eight sections, or in the general municipal incorporation law, there is still no such limitation as to compensation in either. "No Councilman shall be eligible to any other office during the period for which he was elected," is also a provision of section 16, not to be found elsewhere in any municipal laws applicable to Palatka. Section 17 gives power not only to regulate but to prohibit and suppress theatrical and other exhibitions, shows, parades and amusements, and power to punish violation of municipal ordinances by fine to the extent of two hundred dollars or imprisonment to the limit of *three months.* No such power as to suppressing or prohibiting theatricals and other amusements is to be found in the eight sections or the general municipal statute, and though the maximum limit of fine prescribed by the latter is $500 the maximum imprisonment is only *sixty days.*

It is apparent from the above review of the genuine and of the spurious sections, and of the general municipal law, as adopted by one of the former sections, that the same special objects are provided for in a different manner in the two parts of the ostensible law. The two parts are connected in subject-matter. Had they both been actually enacted by the legislative power, and there was some defect of procedure as to the 9th and subsequent sections, vitally affecting their force as law, but no such informality as to the first eight sections, could it be said that the law making power would have adopted the eight sections without the others? In so far as the express provisions of the sections subsequent to the eighth are inconsistent with those preceding them, or with the general municipal law, they would, if valid, control; and this rule each branch of the law making

power must be conclusively presumed to understand. Where the provisions of the valid and invalid parts of a statute are connected in subject matter, and are such that they depend on each other and operate together for the same purpose, or are otherwise so connected together in meaning, that it cannot be presumed the Legislature would have passed the one without the other, the whole act falls. The same result must, even more unquestionably, follow, where the invalid provisions are of such a character as that were they valid they would overcome or nullify the provisions of the valid part on the same subject.

It is true that if a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other, but if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portion. The purpose in the case before us was to revoke the existing government of a city and establish a municipality with altered powers, and in so far as both the time when the powers were to become operative and what they should be, the provisions of the spurious portion of the act are entirely different from those of the other part.

It is a rule that if, when the unconstitutional part is stricken out, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained; and this rule is relied upon as one which supports the eight sections as an independent valid law. Cooley Const. Lim.

If the meaning of this rule be that when the provisions of the genuine parts are such as to sustain an enforcement of the legislative intent shown by them, considered of themselves, they are to be sustained although there may be in

the invalid parts provisions on the same subject which indicate a different legislative intent, then doubtless the eight sections are valid. Such, however, is not the meaning of the rule. Its meaning is, that when there is in the invalid portion nothing which shows a different legislative intent as to the subject matter of the genuine parts than is shown by the latter, and the latter parts are sufficient to secure or authorize an enforcement of this intent, (or, in other words, their own execution,) without the aid of whatever there may be in the invalid parts, the genuine parts will stand.

A consideration of the cases cited by Judge Cooley, from whom we get the rule as expressed, will elucidate its meaning.

In State, *ex rel.*, vs. Commissioners of Perry Co., 5 O. S., 497, the facts were that a statute had been passed in 1853 which, by its first section, provided for the removal of the county seat of Perry county from New Lexington to Somerset, in case the majority of the electors voting at the next general election should vote in favor of such removal. The manner of voting on the question at such election, and of canvassing the votes and certifying the result, was prescribed by subsequent sections. The 5th section of the act provided that if a majority of the electors should vote *against* removal, the County Commissioners should surrender certain obligations which had been previously given to them under an act of 1851, to secure the payment of money to erect county buildings at New Lexington, to which place the county seat had been removed from Somerset pursuant to an election held under the act of 1851. It is perfectly clear that the provisions of the act, other than the 5th section, which imposed a forfeiture and was of itself unconstitutional, were, when considered of themselves or independent of the fifth section, operative or capable of being enforced, yet the

whole act was held invalid. "The provisions of the 5th section," say the court, "are such as would naturally influence the vote upon the adoption of the first and main section, and it would be a fraud upon the voters of Perry county to procure their adoption of the first section by means of the threatened penalties of the fifth, and then declare the fifth section void, but allow it to accomplish its purpose by giving vitality and effect to the first, which, without it, would never have been adopted. The provisions of both sections are made equally to depend upon the result of the election; they were submitted by the Legislature *collectively* to the voters, and could only be passed upon as a whole and must therefore stand or fall together." In Slausson vs. Racine, 13 Wis., 398, the first section of the statute provides that certain lands in Racine township and adjacent to the city of Racine shall be annexed to the city; and the second section defines the new boundaries of the city, and then follows a proviso that the farming and agricultural lands annexed should be exempt from certain taxes, and should be taxed for city and ward purposes at a different and less rate than other lands in the city. If lands are annexed "they must," says the opinion, "be taxed as other lands in the city, and that is a matter proper to be considered by the Legislature in determining whether they shall be annexed. In this act it is evident the Legislature had it under consideration and that they annexed these lands with the idea that they might protect them against such hardships by a proviso for a less rate of taxation. The proviso was clearly intended as a compensation for the annexation, and stronger language could not be well selected to show that the Legislature intended the one to be subject to the condition stated in the other, and that they would not have annexed them unless they had supposed that effect could be given to the

proviso." There is no doubt but that the act would have been operative to annex the lands, if it could be considered as entirely independent of the intent shown by the unconditional proviso.

These and other cases cited by Judge Cooley show that this meaning is what we suggest it to be. C. C. L., 212.

It is apparent that the eight sections are neither complete in themselves nor capable of being executed in accordance with the legislative intent, as such intent appears from the whole act. The two parts are not wholly independent of each other ; the effect of one is overcome by the provisions of the other. In each of the two parts are provisions in the same features of a single scheme.

If there were in those sections, which were not adopted by the two houses of the Legislature, no provisions inconsistent with either the preceding eight sections, or with the provisions of the general municipal incorporation law, a case would be presented in which the eight sections would stand as a valid enactment, for we could then see and would be authorized to say that they exercised no influence upon the Governor in the performance of his function of approving the bill. If, moreover, the ninth and subsequent sections related to some entirely distinct matters or features of which those of the eight sections were entirely independent, the same conclusion might be reached, but as the case stands it is clear that the matters and purposes of the provisions of the two parts are not only not independent, but in some cases the matters are identical, and a different purpose as to them, or as to how they shall be effected, is undeniable.

No presumption, inconsistent with the view that the Governor considered and approved the bill with the belief that all its parts had received the legislative sanction indicated by the signatures it bore, and that he ratified it as a whole, is permissible. However much more the bill may secure

the commendation of some without the ninth and subsequent sections than with them, it cannot be held that the provisions of these sections, so inconsistent as they are with those of the former relating to the same subjects, did not influence his judgment and secure his approval of the measure. We cannot say what his action would have been had they not been before him as a part of the ostensible perfect bill submitted for his official action, nor can we affirm that in case of his vetoing the bill if it had not had the ninth and subsequent sections, that the Legislature would have passed it over the veto. Whether he would have approved, vetoed or permitted it to become a law without his signature, or what would have been the action of the Legislature in case of a veto, is necessarily a matter of speculation.

It cannot be said that the Governor is no part of the law-making power; he is made a part by an express provision of the Constitution, section 28 of Article III. His participation in the making of laws is expressly provided for as an exception to the general prohibition of the second article of the Constitution against any person properly belonging to one department of the government exercising power appertaining to another department. By such section 28 every bill that may have passed the Legislature must, "before becoming a law, be presented to the Governor; if he approves it he shall sign it, but if not he shall return it with his objections to the house in which it originated," and a two-thirds vote of the members present in each house is necessary to make it a law against such objections. If any bill shall not be returned within five days after it is presented to the Governor, or if it shall not be filed by him in the office of the Secretary of State in ten days after the adjournment of the Legislature, should that body adjourn before the expiration of the five days, it is true the bill shall be a law in like manner as if he had signed it, yet the spirit of

these limitations as to time was not to either disparage the importance of the functions of the Governor as to legislation, or relieve him from a faithful performance of his duty in considering and forming an intelligent opinion of the bill presented, but it was to secure promptness of action on his part, and in the case of the ten day limitation the purpose was also to extend his powers as to legislation beyond the end of the session of the Legislature, whereas without it his powers would have expired with the session. The purpose of the section of the Constitution was to require of the Governor careful consideration of every bill before it can become a law, and the exercise of his judgment as a public official as to the wisdom of the proposed legislation, in the light of public interest, and to require an indication of such judgment by express approval, or by silent acquiescence after investigation, or by express disapproval. The authorities speak of the Governor as being a component part of the law-making power in the exercise of these functions. Fowler vs. Pierce, 2 Cal., 165 ; Cooley's Const. Lims., 184.

In May, 1887, Governor Perry asked the opinion of the Justices of this court (if it could be properly required) as to his duty to disapprove certain bills as beyond the power of the Legislature to pass at its then pending session, though otherwise unobjectionable. The Constitution makes it our duty to interpret the Constitution, at the request of the Governor, upon any question affecting his " executive powers and duties.' " We declined to give the opinion because the question asked affected a legislative and not an executive duty of the Governor. Chief Justice McWhorter, speaking for the several justices, (p. 298, 23 Fla., Repts,) said : " Is the opinion you desire one relating to your ' executive powers and duties ?' The e act legal meaning of the word ' executive ' has been many times authoritatively fixed and defined. It means a duty appertaining to the

execution of the laws as they exist. It would follow that the law must be enacted according to all the terms prescribed by the Constitution before the duty of executing it can exist. Any duty imposed by the Constitution on the Governor with reference to a bill, before it becomes a law, is not an executive duty. The enactment of laws is a legislative duty, and when your Excellency is required by the Constitution to do any act which is an essential pre-requisite thereto, such act is legislative, and is performed by you as a part of the law-making power, and not as the law-executing power."

If the provisions are not meaningless, why is he not a part of the law-making power? Both the approval of and the silent acquiescence in a bill involves the consideration of its provisions and so does a disapproval. A failure to approve or to veto can not be regarded as an omission to consider the bill, but can be regarded only as a silent acquiescence after careful consideration of all the provisions of the bill; any other theory imputes to the Governor absolute dereliction of duty. No bill can be approved or disapproved without an opportunity to consider it, and the consideration and approval or disapproval of a bill of one import or effect, does not even involve an opportunity to consider another bill of substantially different legal import or effect. Unless substantially the same bill as was passed by the Legislature is submitted to the Governor for his approval or disapproval, it can not become a law either by his approval or silence, or against his disapproval, and this is so because the Constitution requires that before a bill can become a law, it must be submitted to the Governor.

No bill of the same import or legal effect as the first eight sections has ever been presented to the Governor for his action, and if we should sustain these sections, we

310 • SUPREME COURT.

The State ex rel. Boyd et al. v. Deal—Opinion of Court.

would do so without his ever having had an opportunity to act upon them as a governmental measure of the import and effect which they, of themselves, carry. There, then, is no difference between this case and one in which an entirely distinct bill of the same legal effect as the eight sections qualified by the other 23 sections had been presented to him.

The authorities cited above are consistent with each other and affirm the invalidity of the first eight sections.

Whenever an ostensibly perfect bill is submitted to the Governor for his action as a part of the law making power, and he considers and approves its several parts collectively, and with the idea that they are all valid, and it subsequently appears that some of them are spurious, a court should hesitate before pronouncing any of its parts to have the force of law, and should not give them such effect, unless it is entirely clear that the spurious parts are such as could not have influenced him to approve the other parts, or, in other words, unless the latter are entirely severable, or distinct, and independent from the former. Any other rule must result in trespass by the judicial department upon the legislative domain, and encourage not only negligence, but even efforts upon the part of interested evil persons to secure the interpolation of matter which they might think would overcome some known executive objection, and yet not defeat the genuine parts of the bill.

The first eight sections, as well as the others, are void.

The motion to quash the return is denied, and the judgment of the court will be that the respondent go without day and recover his costs to be taxed by the clerk. State, ex rel., vs. County Commissioners, Sumter Co., 22 Fla., 364, 370. It will be so ordered.

THE CHIEF-JUSTICE delivered the following dissenting opinion :

I do not concur in the opinion of a majority of the court, and will give my own views of the case.

On the 12th of November, 1887, the relators in their capacity as City Council of Palatka, and as citizens of said city, filed their petition in this court for a writ of mandamus to compel respondent, as Assessor of the city, to assess the property therein under section 7, of chapter 3780, of the acts of 1887. The substance of their petition is, that the time for beginning the assessment has arrived, and that the City Council, by resolution adopted in September, ordered the Assessor to proceed with the assessment under the section mentioned, but that he refused, and still refuses, claiming that he should make his assessment in the manner provided by the general law for the incorporation of cities and towns, because under section 30 of the act containing section 7, that act does not become operative until the Mayor and City Councilmen have been elected and qualified under it. The relators allege that said section 30 is no part of the law, inasmuch as neither that section nor any others, except those from 1 to 8, inclusive, were ever passed by the Legislature, wherefore they say the assessment should be made as the City Council ordered.

To the alternative writ the respondent makes return that he refuses to make the assessment as ordered—

1st. Because chapter 3780 is not a valid law, being local or special, within the meaning of the Constitution, and no notice of intention to apply for the same was published sixty days, as the Constitution requires; and further, because in the Legislature which passed it, the Senate was presided over by the Lieutenant-Governor, and not by one of its own members, as provided by the Constitution.

2d. Because if said chapter be a valid law, it does not go into effect until the Mayor and Councilmen have been elected and qualified thereunder, and that these have not been elected; and further, because section 25 of the act provides that " the assessment shall be made * * under the laws by which * property is assessed for State and county purposes."

Chapter 3780, referred to, is " An act to revoke and abolish the present municipal government of the town or city of Palatka, and to reorganize a city government for the said town or city," approved June 3d, 1887.

At the hearing, the relators, to show that only the first eight sections of the act were passed by the · Legislature, produced in evidence, through the Secretary of State, the original bill, and the original engrossed bill, and the journals of the Senate and House of the session of the Legislature in which the act was passed. From these it is shown that the bill originated in the Senate, and was passed there, containing thirty-one sections, the last twenty-three of which are the sections from 9 to 31, inclusive, of the act as it now stands. The bill, as thus passed, went to the House, and in that body was amended by striking out all after the enacting clause, and inserting eight sections, which are the first eight sections of the act as it now stands. The Senate concurred in the amendment; and the bill, thus amended, was the bill, and all of the bill, that was finally passed by both houses.

It is shown by inspection of the engrossed bill that the change which resulted in the present act was brought about in the enrollment by substituting the eight sections of the amended bill for the first eight of the Senate bill, and then adding the remaining twenty-three sections of the latter bill, which had not been passed.

The case thus presented involves the constitutionality of

the act, which is assailed on two grounds. The first of these is that the act, being a local one, the Constitution requires sixty days notice before the introduction of the bill, and respondent says this was not given; and the second is that the law is unconstitutional because the Lieutenant-Governor presided over the Senate, instead of one of the members of the body elected, by itself. In the case of the State *ex rel.* McQuaid *et al.* vs. County Commissioners of Duval county, decided at the last term, this court held, in reference to the same objections to the constitutionality of the charter for the city of Jacksonville, that the objections are not well taken. That ruling will apply to this case, and it is unnecessary to repeat here the reasons upon which the ruling was based.

These objections aside, the question arises whether the act, in view of the evidence as to its passage, has constitutional standing as a legislative enactment. While every presumption is to be allowed in favor of the Legislature to sustain its acts, there is abundant authority to the effect that its journals and authentic papers may be resorted to for evidence of its action on the bills before it, that get into the statute book as laws, to ascertain whether they have or have not been passed in accordance with the requirements of the Constitution; and that if, from such evidence, it be found that what purports to be a law was never passed it may be pronounced to be of no validity. Cooley's Con. Lim., 163; Gardner vs. Collector, 6 Wallace, 499; Spangler vs. Jacoby, 14 Ill., 297; Beny vs. B. & D. P. R. R. Co., 41 Md., 446; Asburn vs. Staley, 5 W. Va., 85; S. C. 13 Am. Rep., 640.

It is clearly shown by the journals before us that the Palatka charter, as it passed the Legislature, had only eight sections, these being the first eight in the approved act; and just as clearly shown that the other twenty-three sec-

tions of the approved act were not passed by the Legisla-
ture. However it may have occurred, whether by design
or mistake, the bill as passed is not the bill enrolled,
signed and approved. There can be no question but that
the sections not passed have no validity. They appear un-
der the form of law, but are utterly null and void. The
question then is, whether their infirmity attaches to the
other eight sections, and invalidates the whole act? The
decisions on this subject are diverse. In 43 Ala., 721, is a
case (Jones vs. Hutchinson) somewhat similar to this. The
act there contained only one section, with a proviso. From
the journals of the Legislature it was shown that the pro-
viso was not passed, while the other portion of the act was.
The court held that the bill signed and approved was not
the bill passed, and that, therefore, the whole act was void.
Moody vs. the State, 48 Ala., 115, is to the same effect.
On the other hand, in State vs. Platt, 28 So. Ca.., N. S.,
150, it is held that when part of an act was properly passed
by the Legislature, and part not, the courts may either de-
clare the whole act void, or only that portion not passed.
The case in 41 Md., *supra*, was one in which part of a stat-
ute was sustained, while another part of it was declared
null and void, because it had not been passed by the Legis-
lature. In that case it is said: " As the entire published
statute, except the third section, was regularly passed by
the Legislature, and approved by the Governor, there can
be no reason for declaring the other portions of it void, be-
cause the third section is found to be a nullity. Statutes
may be void in part and good in part ; and if the part that
is valid is entirely distinct and severable from that which
is void, the courts will uphold and enforce the former as if
passed disconnected from the latter." I think this the cor-
rect rule. The Alabama cases must have been decided on
a distinction in the mind of the court, though not · ex-

pressed, which placed an act, parts of which are invalid, because not passed by the Legislature, on some different footing from an act with part regularly passed, but void because unconstitutional. In my opinion there is no just distinction by which the familiar rule that courts may uphold one portion of an act while declaring another portion void, should not apply to an act whose defect arises from one portion of it not having been passed by the Legislature. If that portion can be stricken out, and, in the language of Cooley, " that which remains is complete in itself, and capable of being executed in accordance with the the apparent legislative intent, wholly independent of that rejected, it must be sustained." I can see no reason why this doctrine should not apply to all statutes alike, whatever may be the grounds of the invalidity of their bad parts.

Whatever is void is not law, say the courts. They further say that what is void in a law may be stricken from it, and that it is their duty if what remains can be enforced independent of the part stricken, to uphold that much ; but they nowhere say, and it would be inconsistency to say, that being void for one reason this is unauthorized, while if void for another a different rule may prevail. In every case where part of a law is sustained to the exclusion of another part, the whole has been approved by the executive, the bad and the good alike. If it has the form of law in a case like the present, as well as in cases where the whole act was passed, it would seem to be making a distinction without a difference to declare the former all void and the latter void only as to its bad parts.

It is suggested that the conclusion which sustains this act, disregards the position and rights of the Governor, that as a component part of the legislative power his action is directed solely to the consideration of the bill presented

to him, and if a bill is presented which he approves, it is a bill that in its entirety must be considered a bill duly passed by the Legislature, else no bill at all. This view, as I think, rests upon a misapprehension of the relations of the Governor towards legislation. The provision of the Constitution which connects him with legislation is this : "Every bill that may have passed the Legislature shall, before becoming a law, be presented to the Governor ; if he approves it he shall sign it, but if not he shall return it, with his objections, to the house in which it originated, which house shall cause such objections to be entered upon its journal, and proceed to reconsider it ; if, after such reconsideration, it shall pass both houses by a two-thirds vote of members present, which vote shall be entered on the journal of each house, it shall become a law. If any bill shall not be returned within five days after it shall have been presented to the Governor (Sunday excepted) the same shall be a law, in like manner as if he had signed it. If the Legislature, by its final adjournment, prevent such action, such bill shall be a law, unless the Governor, within ten days after the adjournment, shall file such bill, with his objections thereto, in the office of the Secretary of State, who shall lay the same before the Legislature at its next session, and if the same shall receive two-thirds of the votes present it shall become a law." Section 28, Article III.

This does not convey the idea, loosely expressed, it seems to me, by some authorities, that the Governor is a component part of the Legislature. The three departments of government—legislative, executive and judicial, have separate, distinct functions, each independent of the other, with exceptions provided for, one of which is found in the foregoing section of the Constitution, and also except so

far as the Constitution provides checks to restrain encroach-
ments upon each other, or upon the rights or welfare of
the people.   The executive, by the checking power given
to that department, restrains the legislative by the inter-
position of a veto.    The judicial department puts its
restraint upon both the others through its power to declare
their acts unconstitutional and void.    And the legislative
department regulates the others by its authority to make
laws, unlimited except by such prohibitions as are imposed
by the Constitution.   Each acts for itself within its sphere,
and when they are brought into connection, as the Gover-
nor and Legislature are in the passage of laws, or into con-
tact, as the judiciary may be with the others in its author-
ity to pronounce upon their acts or proceedings, it is chiefly
in the way of restraint or check upon each other.   This
adjustment is considered the crowning excellence of the
governments of this country—the cardinal idea being that
the safety of our institutions depends upon the holding of
each department to its separate functions.

It is the function of the legislative department to pass
laws, and that function is subject to no restraint except the
veto of the executive.   When an act is passed and present-
ed to the Governor for his approval, it is not because that
approval is necessary to make it a law, for it becomes a law
irrespective of his approval, if he does not challenge it by
a veto ; and even if he vetoes it, it may become a law in-
dependent of him by a two-thirds vote of the two houses
of the Legislature. It is clear, therefore, that the Governor's
agency in the passage of laws is not affirmative, but only
a sign to indicate that he has no veto to interpose.

Then, if all bills passed by the Legislature may become
laws without any affirmative action of the Governor, does
his approval of a bill, part of which has been passed by

the Legislature, continuing other parts not passed, fail to make law of the part passed ?   Why should it ?   The only reason given is that the bill presented to the Governor was not the bill which passed, though included in it.   How that makes the question of the validity of the part passed, if it can stand by itself, different in principle from the case of a bill, all of which was passed and approved, but some of it void, while the rest may be sustained, I am unable to conceive.   I cannot enter into the reasons of the Governor for his approval in the one case any more than in the other.   To do that would require us to say that he would not have approved the bill if it had been presented to him as actually passed.   There can be no escape from this, except upon the naked rule that a bill presented to the Governor and approved by him, which contains substantive matter not passed by the Legislature, is *ipso facto* en_ tirely void.   I think such a rule is against the analogies of the law, and that, in view of the mischief that may be perpetrated under it, either by evil design or clerical mistake, good reason will not uphold it.

Applying the foregoing views to the act under consideration, I am now to enquire whether, if all the sections after the 8th are stricken out, a law is left complete in itself, answering the intent of the Legislature, and in nowise dependent on those sections, or any of them.   *Prima facie*, there would be such a law, for those eight sections constitute the law as it actually passed the Legislature.   But, ooking to the act itself, I come to the same conclusion.

The first section provides for the division of the city into four wards, restricts voting to the ward in which the voter resides, and authorizes the Mayor to appoint three inspectors of election in each   ard.

The second section provides that at the next annual election there shall be chosen two Aldermen for each ward,

and an Alderman at large, who shall constitute the city Council; and fixes the terms of the Aldermen so that at subsequent annual elections one shall be chosen for each ward to serve for two years, but the one at large to be elected every year.

The third section provides the mode of appointment of City Marshal, fixes his salary, and directs how he may be removed or suspended.

The fourth section fixes the salary of the Mayor, and provides for the disposition of fines, forfeitures, &c.

The fifth section invests the City Council with power to levy taxes annually to the extent of two per cent. of the assessed value of the property in the city, and no more.

The sixth section empowers the City Council, with approval of a majority of the registered voters of the city, to issue bonds for sanitary and municipal purposes, the interest on same not to exceed the legal rate of interest of the State.

The seventh section provides that the City Assessor shall assess property in the city equally at its fair and reasonable valuation; and gives the City Council power to act as a board of equalization.

The eighth section is as follows: " Nothing in this act shall be so construed as to deprive the city of Palatka of its rights, powers and privileges now allowed by law under the general incorporation act for cities and towns in this State, but all the provisions of said general incorporation law, not inconsistent with this act, shall apply to said city of Palatka."

From this compendium of the eight sections it will be seen that the first seven provide for special matters pertaining to the government of Palatka, while the eighth provides for all other matters necessary to complete the organization by continuing in force such provisions of the

general law for the incorporation of towns and cities as are not inconsistént with the previous seven. Practically the general incorporation law is kept in force, modified only by the provisions of those seven sections. Taken together, they constitute a law complete in itself, and answering the purpose of reorganization expressed in the title of the act. I think, therefore, that these eight sections, disencumbered of the others, should be sustained as the act passed by the Legislature, signed by its officers and approved by the Governor.