354 So.2d 869 (1978)
Annette McCALL, Appellant,
v.
STATE of Florida, Appellee.
No. 51093.
Supreme Court of Florida.
January 12, 1978.
*870 R. Cory Schnepper, of Ser, De Cardenas & Levine, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and Ira N. Loewy, Asst. Atty. Gen., Miami, for appellee.
HATCHETT, Justice.
Under jurisdiction granted by Article V, Section 3(b)(1), Florida Constitution, we must determine whether Section 231.07, Florida Statutes (1975), which makes one criminally liable "who upbraids, abuses, or insults any member of the instructional staff on school property or in the presence of the pupils at a school activity" is constitutional. Contrary to the ruling of the trial court, we find that it is not.
This case arose from an unfortunate incident occurring between appellant and her daughter's teacher. On the day of the incident, Mrs. McCall's daughter came home from school and informed her mother that she had been struck by her teacher. Mrs. McCall immediately went to the school and confronted the teacher. This confrontation became a profane verbal attack upon the instructor and took place in the presence of at least 50 students.
A complaint was filed upon the sworn affidavit of the teacher, charging appellant with a violation of Section 231.07, Florida Statutes (1975), which reads:
Any person who upbraids, abuses or insults any member of the instructional staff on school property or in the presence of the pupils at a school activity, or any person not otherwise subject to the rules and regulations of the school who creates a disturbance on the property or grounds of any school, who commits any act that interrupts the orderly conduct of a school or any activity thereof shall be guilty of a misdemeanor of the second degree, punishable as provided by law. This section shall not apply to any pupil in or subject to the discipline of a school.
Appellant moved to dismiss on grounds that the statute is unconstitutional in that it "violates the First and Fourteenth Amendments to the Constitution of the United States of America, because on its face this is a standardless, vague, overbroad statute, which includes within its prohibition constitutionally protected words." The statute was also attacked on the grounds that it violates Article I, Section 4, of the Constitution of Florida.
Motion was denied and appellant convicted.
Section 231.07 is designed to insure that the schools of this state will operate smoothly, without undue interruption or disturbance from persons outside the school community. The interests sought to be protected are worthy. However, we must determine whether our historical and judicial notions of free speech, guaranteed under the Florida and federal Constitutions are compatible with a statute which attempts to regulate speech in the manner prescribed by the statute under review.
It is clear that if we were concerned solely with the language used by appellant, her conviction would be overturned under our recent opinion in Spears v. State, 337 So.2d 977 (Fla. 1976). But there is more here; the activity described as unlawful by Section 231.07 relates to language used in a particular place dedicated to a special purpose for the benefit of special people.
The nature of a place, "the pattern of its normal activities, dictate the kinds of regulations of time, place, and manner that are reasonable." Although a silent vigil may not unduly interfere with a public library, Brown v. Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966), making a speech in the reading room almost certainly would. That same speech should be perfectly appropriate in a park. The crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time. Grayned v. City of Rockford, (1972) 408 U.S. 104 at *871 116, 92 S.Ct. 2294 at 2303, 33 L.Ed.2d 222. (Footnotes omitted)
While it is true that rights protected by the First Amendment are not magically lost when one steps upon school property, "neither teachers, students, nor anyone else has an absolute constitutional right to use all parts of a school building for unlimited expressive purposes." Connecticut State Federation of Teachers v. Board of Education Members, 538 F.2d 471 at 480 (2nd Cir.1976). "Time, place and manner" regulations may be necessary to further significant governmental interests, and are permitted. But, in assessing the reasonableness of such regulations "we must weigh heavily the fact that communication is involved; the regulation must be narrowly tailored to further the State's legitimate interest." Grayned, supra, 408 at 116, 92 S.Ct. at 2303. The test, as announced in Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) is whether a regulation is designed to restrict only that expression which "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." At 513, 89 S.Ct. at 740. In Tinker, the United States Supreme Court held unconstitutional a school regulation which forbade students from wearing black armbands (on school property) as a symbolic way of objecting to the hostilities in Viet Nam. The Court stated that the expressive activity involved in that case, i.e., the wearing of armbands, "was entirely divorced from actually or potentially disruptive conduct" and was therefore protected.
In Grayned v. City of Rockford, supra, the Supreme Court again considered the subject of First Amendment rights in the framework of the school environment. In that case, Grayned, a demonstrator picketing in front of an Illinois high school was convicted of violating an anti picketing ordinance which outlawed demonstrations near schools in session, and an anti noise ordinance[1] which prohibited the willful making of noise or diversion on grounds adjacent to a school while school was in session. The Court found the anti picketing ordinance unconstitutional on equal protection grounds,[2] but upheld the anti noise ordinance against challenges of vagueness and overbreadth, as follows:
Designed, according to its preamble, "for the protection of Schools," the ordinance forbids deliberately noisy or diversionary activity that disrupts or is about to disrupt normal school activities. It forbids this willful activity at fixed times  when school is in session  and at a sufficiently fixed place  "adjacent" to the school. Grayned v. City of Rockford, 408 U.S. at 110, 92 S.Ct. at 2300.
* * * * * *
Although the prohibited quantum of disturbance is not specified in the ordinance, it is apparent from the statute's announced purpose that the measure is whether normal school activity has been or is about to be disrupted. We do not have a vague, general "breach of the peace" ordinance, but a statute written specifically for the school context, where the prohibited disturbances are easily measured by their impact on the normal activities of the school. Given this "particular context," the ordinance gives "fair notice to those to whom [it] is directed." Grayned v. City of Rockford, supra, at page 112, 92 S.Ct. at page 2301.
With this guidance from Grayned, we now review our statute to determine whether it too is "written specifically for the school context, where the prohibited disturbances are easily measured by their impact on the normal activities of the school."
*872 The first portion of Section 231.07, under which the appellant was convicted, requires proof that a member of the instructional staff was upbraided, abused, or insulted, on school property, or in the presence of pupils at a school activity.[3] There is no language tying the prohibited expression to disruption of normal school activities at specific fixed times. Appellant correctly points out that this portion of the statute would allow a conviction of a 100 year old woman sitting on school property at midnight, with no students present who tells a teacher that the quality of the teacher's work is poor. Or, a conviction could result from a person telling a band master after a parade, while not on school grounds but in the presence of students, that the band performed poorly due to the band master's inability to teach music. Many other examples of harmless expression can be readily brought to mind. Section 231.07 is not "narrowly tailored to further the state's legitimate interests," and encompasses speech protected by the First and Fourteenth Amendments. Such a statute cannot stand.[4]Spears v. State, supra.
Certainly, appellant's conduct was sufficient to upbraid, abuse, and insult the teacher. There is no doubt that the confrontation occurred on school grounds and in the presence of pupils. The record is clear that appellant used the most vulgar of language. But, she may not be punished for her conduct under this statute, even though her conduct is reprehensible, if anyone engaged in protected speech activities could also be punished under the same statute. Coates v. City of Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971).[5]
We now turn our attention to whether the first portion of Section 231.07, Florida Statutes (1975), is severable. We think it is. If a portion of a bill is void as not having been passed in compliance with the Constitution, it does not necessarily follow that the whole statute is void. If the genuine provisions are separable, and what remains is complete in itself and capable of being executed in accord with the legislative intent, the remainder of the bill will be sustained. State ex rel. Boyd v. Deal (1888) 24 Fla. 293, 4 So. 899. See also Cramp v. Board of Public Instruction, 137 So.2d 828 (Fla. 1962) and State v. Calhoun County, 127 Fla. 304, 170 So. 883 (1936). We note that all other provisions of this statute require expressive activity designed to disturb the school atmosphere.
Accordingly, the judgment of conviction is reversed.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD, ENGLAND, SUNDBERG and KARL, JJ., concur.
NOTES
[1] [N]o person, while on public or private grounds adjacent to any building in which a school or any class thereof is in session, shall willfully make or assist in the making of any noise or diversion which disturbs or tends to disturb the peace or good order of such school session or class thereof... ." Code of Ordinances, c. 28, § 19.2(a).
[2] This ordinance impermissibly distinguished between labor picketing and other peaceful picketing.
[3] This portion of the statute is joined to the remaining portions by the disjunctive "or" and must therefore be treated separately.
[4] Appellant has not raised and we do not pass upon the question whether this statute may also be void because of equal protection violations.
[5] Although appellant may not be convicted under this statute, our decisions have recognized the state's power to constitutionally punish language which we call "fighting words" under carefully drawn statutes, not susceptible of application to protected expression. Spears v. State, supra. Appellant could probably be prosecuted under another statute more closely related to the conduct in which she engaged.