695 So.2d 477 (1997)
M.C., a juvenile, Appellant,
v.
The STATE of Florida, Appellee.
No. 96-1986.
District Court of Appeal of Florida, Third District.
June 11, 1997.
*478 Leonard J. Cooperman, Miami, for appellant.
Robert A. Butterworth, Attorney General, and Fleur J. Lobree, Assistant Attorney General, and Sandra Jaggard, Assistant Attorney General, for appellee.
Before LEVY, GREEN and SHEVIN, JJ.
GREEN, Judge.
M.C., a juvenile was found guilty in a delinquency proceeding of violating section 877.13, Florida Statutes (1995) which makes it unlawful for anyone, among other things, to knowingly disrupt or interfere with the lawful administration or functions of an educational institution. M.C. argues here, as she did below, that this statute is facially unconstitutional in that it is violative of her right to free speech and it is overbroad and vague. We conclude, however, that this statute suffers from none of these maladies and affirm.

*479 I
M.C. and her brother were both students at J.F.K. Middle School in Dade County, Florida on February 29, 1996, the day of the incident. On that date, M.C.'s brother was arrested for battery on a police officer at about 1:25 p.m. by school police officer, Andrew Snoke. Officer Snoke then took M.C.'s brother to the school's main office. The main office area is approximately ten feet by eleven feet and contains the principal's office, Officer Snoke's office, and two desk areas for secretaries and/or office aides. Approximately five minutes after the arrest of her brother, or at 1:30 p.m., M.C. stormed into the main office area waving her hands and hurling obscenities at Officer Snoke in a loud and threatening manner for arresting her brother.[1] She was accompanied or followed[2] to the office by a group of five to seven other students. M.C. was waving or flailing her arms as if to encourage or incite the other students to join in the protest of her brother's arrest. In fact, according to the testimony, these students did raise their hands in protest of the situation and appeared to be in general support of M.C.
When M.C. and the group of students entered the office, Officer Snoke and two secretaries and office aides were present. When M.C. arrived in the office, she walked past both the reception area and the secretarial desk areas and went straight towards the principal's office area to continue her loud tirade against the officer there. According to the evidence below, this area of the office was normally off limits to students without permission and M.C. had no such permission on the date and time in question. As a result of M.C.'s actions and loud verbal outbursts, Officer Snoke and one of the secretaries testified essentially that they could not perform their duties and that the office functions in general were temporarily brought to a halt.[3] Officer Snoke testified that he arrested M.C. as a result of her volatile conduct and its disruptive effect on the office functions. The officer stated that he was basically concerned about everyone's safety in the office. Once M.C. was arrested, the group of students who had accompanied her to the office quickly dispersed and left.

II
The state filed a one count petition of delinquency against M.C. for violation of section 877.13. This statute provides that:
(1) It is unlawful for any person:
(a) Knowingly to disrupt or interfere with the lawful administration or functions of any educational institution, school board, or activity on school board property in this state.
(b) Knowingly to advise, counsel, or instruct any school pupil or school employee to disrupt any school or school board function, activity on school board property, or classroom.
(c) Knowingly to interfere with the attendance of any other school pupil or school employee in a school or classroom.
(d) To conspire to riot or to engage in any school campus or school function disruption or disturbance which interferes with the educational processes or with the orderly conduct of a school campus, school, or school board function or activity on school board property.
(2) This section shall apply to all educational institutions, school boards, and functions or activities on school board property; however, nothing herein shall deny public employees the opportunity to exercise their rights pursuant to part II of chapter 447.
(3) Any person who violates the provisions of this section is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
M.C. moved to dismiss the delinquency proceeding on the grounds that this statute was *480 facially unconstitutional. The trial court denied this motion and subsequently found M.C. guilty as charged.

III
As we are faced with a facial challenge to the overbreadth and vagueness of section 877.13, we find that our first task is to determine whether this statute reaches a substantial amount of constitutionally protected conduct under the First Amendment. See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). "If it does not, then the overbreadth challenge must fail." Id. We must next address the facial vagueness challenge because a law that satisfies the overbreadth test may nevertheless be facially challenged for vagueness, in violation of due process. Id. at 497, 102 S.Ct. at 1192-93. "To succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications." Id. As the U.S. Supreme Court explained: "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." Id. at 495, 102 S.Ct. at 1191.[4]

FREE SPEECH ARGUMENT
We therefore first consider whether the statute is violative of M.C.'s First Amendment rights or is overbroad in the sense that it inhibits protected First Amendment rights of others. M.C. asserts that under this court's decision in L.A.T. v. State, 650 So.2d 214 (Fla. 3d DCA 1995), her loud verbal protests in the school's office was constitutionally protected free speech under both the federal and Florida constitutions. We disagree and find M.C.'s reliance upon L.A.T. to be wholly misplaced.
In L.A.T., this court reversed a juvenile's adjudication of delinquency for disorderly conduct which had been predicated upon the juvenile's screaming obscenities to police officers who were arresting the juvenile's friend in a shopping center parking lot. This court found L.A.T.'s conduct to be specifically protected by the First Amendment where L.A.T.'s verbal protests neither "inflict[ed] injury or tend[ed] to incite an immediate breach of the peace." 650 So.2d at 217 (quoting Lewis v. City of New Orleans, 415 U.S. 130, 133, 94 S.Ct. 970, 972, 39 L.Ed.2d 214 (1974)). While L.A.T.'s loud verbal protests of police actions may be constitutionally protected in the setting of an open public shopping center parking lot, those same protests may not enjoy such constitutional protection in other settings.
The nature of a place, `the pattern of its normal activities, dictate the kinds of regulations of time, place, and manner that are reasonable.' Although a silent vigil may not unduly interfere with a public library, Brown v. Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966), making a speech in the reading room almost certainly would. That same speech should be perfectly appropriate in a park. The crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time.
Grayned v. City of Rockford, 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972)(footnotes omitted).
The obvious intent of section 877.13 is to ensure that the educational institutions and their administrators are free to perform their lawful functions without undue or unwarranted interference or disruption from others. We note early on that this statute does not seek to proscribe or regulate the content of any particular speech; rather it seeks to regulate expressive activity or conduct which significantly interferes with lawful educational functions. We do not believe that M.C.'s obstreperous protests in the school office were compatible with its normal functions.
*481 "While it is true that rights protected by the First Amendment are not magically lost when one steps upon school property, `neither teachers, students, nor anyone else has an absolute constitutional right to use all parts of a school building for unlimited expressive purposes.'" McCall v. State, 354 So.2d 869, 871 (Fla.1978) (quoting Connecticut State Federation of Teachers v. Board of Ed. Members, 538 F.2d 471, 480 (2d Cir.1976)). Contrary to M.C.'s assertion on appeal, she did not have an unlimited right to verbally protest her brother's arrest while on school property. "Time, place, and manner regulations may be necessary to further significant governmental interests and are permitted." McCall, 354 So.2d at 871. In assessing the reasonableness of the statute before us, we must determine whether it is narrowly tailored to further the state's legitimate interest in having the educational institutions of this state function or operate smoothly without material disruption. Id. We find that is does. Our touchstone in making this determination is Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969) wherein the U.S. Supreme Court was called upon to harmonize or reconcile the First Amendment rights with the special characteristics of the school environment. In Tinker, the Court held unconstitutional a school regulation which prohibited students from wearing black armbands on school property in symbolic protest of the Vietnam War. While expressly acknowledging that expressive activity could be restricted in the school setting, the Court announced the test as being whether the forbidden conduct or expression "materially disrupts classwork or involves substantial disorder or invasion of the rights of others...." Id. at 513, 89 S.Ct. at 740. The Tinker Court found the wearing of armbands to be constitutionally protected because "[t]hey neither interrupted school activities nor sought to intrude in the school affairs or the lives of others. They caused discussion outside of the classrooms, but no interference with work and no disorder." Id. at 514, 89 S.Ct. at 740.
The clear factual distinction between the statute challenged in Tinker and section 877.13 is that the prohibited conduct in Tinker addressed pure controversial expression which was entirely divorced from actual or potential disruptive conduct by those participating in it. Id. at 505, 89 S.Ct. at 735-36. For that reason, the Tinker Court concluded that the students were entitled to comprehensive protection under the First Amendment. Id. at 505-06, 89 S.Ct. at 735-36
We conclude that section 877.13 does pass constitutional muster and is not violative of the First Amendment under the Tinker test because its intended purpose is to prevent only that expression or conduct which materially disrupts or interferes with normal school functions or activities. Unlike the passive, expressive conduct of the students in Tinker, M.C.'s boisterous tirade brought the school office's normal activities temporarily to a halt. Moreover, but for M.C.'s outburst, the students who joined her in the office would have presumably been involved with their other normal school activities at the time. M.C. thus interfered or disrupted with their normal school regimen as well. Under these circumstances, we cannot conclude that M.C.'s activities were entitled to comprehensive protection under the First Amendment.

OVERBREADTH ARGUMENT
M.C. also asserts that section 877.13 is overbroad on its face because it imposes a blanket prohibition against creating a disturbance without any language tying the prohibited expression to disruption of normal school activities at fixed times. See McCall, 354 So.2d at 872. For much of the same reasons that we find that this statute does not encompass conduct or expression protected under the First and Fourteenth Amendments, so too we conclude that it is not impermissibly overbroad.
In Grayned v. City of Rockford, the Supreme Court found that a school anti-noise ordinance which made it unlawful for anyone to wilfully make or assist in the making of noise which disturbed the peace of a school session or class to be constitutional as against an overbreadth challenge. The Court noted that although the prohibited quantum of disturbance was not specified in *482 the challenged ordinance in accordance with the Tinker test, it nevertheless was apparent from the statute's announced purpose (i.e., protection of schools) that the appropriate measure was whether normal school activity had been or was about to be disrupted.
We do not have here a vague, general `breach of the peace' ordinance, but a statute written specifically for the school context, where the prohibited disturbances are easily measured by their impact on the normal activities of the school. Given this `particular context,' the ordinance gives `fair notice to those to whom (it) is directed.'
Grayned, 408 U.S. at 112, 92 S.Ct. at 2301 (footnotes omitted).
We similarly find that although the prohibited quantum of disturbance is also not specified in section 877.13, the measure is clearly whether the normal lawful school functions or activities have been or are about to be interfered with or disrupted. This statute prohibits deliberate or wilful activity at fixed times (i.e., when school administrators and students are engaged in normal school functions or activities) and at a sufficiently fixed place (i.e., on school board property). Contrary to M.C.'s arguments, this statute was enacted specifically for the school setting, where the prohibited disturbances can easily be measured by their impact on the normal school functions and activities.
For these reasons, we find section 877.13 to be wholly distinguishable from the statute struck down by the Florida Supreme Court in McCall v. State, the case upon which M.C. primarily relies in support of her overbreadth argument. In McCall, the court struck down a portion of section 231.07, Florida Statutes (1975) which imposed criminal liability upon one "who upbraids, abuses, or insults any member of the instructional staff on school property or in the presence of the pupils at a school activity...." 354 So.2d at 870. The court held that this portion of section 231.07 was unconstitutional because it was not "narrowly tailored to further the state's legitimate interests, and encompassed speech protected by the First and Fourteenth Amendments."[5]Id. at 872.

VAGUENESS ARGUMENT
M.C.'s final challenge to section 877.13 is that it is vague both on its face and as applied because the prohibited "disruptive" or "interfering" conduct is not objectively defined in the statute. In Grayned, the U.S. Supreme Court enunciated standards for evaluating vagueness in enactments as follows:
Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute `abut(s) upon sensitive areas of basic First Amendment freedoms,' it `operates to inhibit the exercise of (those) freedoms.' Uncertain meanings inevitably lead citizens to `steer far wider of the unlawful zone'... than if the boundaries of the forbidden areas were clearly marked.
408 U.S. at 108-09, 92 S.Ct. at 2298-99 (footnotes and citations omitted).
Significantly, in evaluating criminal or quasi-criminal enactments against a challenge for vagueness, the Supreme Court has long recognized that a mens rea or scienter requirement to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite *483 statute invalid. See Screws v. United States, 325 U.S. 91, 101, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495 (1945); see also United States v. United States Gypsum Co., 438 U.S. 422, 445-46, 98 S.Ct. 2864, 2877-78, 57 L.Ed.2d 854 (1978) (upholding federal criminal antitrust statute which had a scienter requirement); Boyce Motor Lines v. United States, 342 U.S. 337, 342, 72 S.Ct. 329, 331-32, 96 L.Ed. 367 (1952) (commerce regulation not unconstitutionally vague where requirement of culpable intent is necessary element of offense); Cf. Papachristou v. Jacksonville, 405 U.S. 156, 163, 92 S.Ct. 839, 843-44, 31 L.Ed.2d 110 (1972) (general intent vagrancy statute unconstitutionally vague because it lacked specific intent requirement).
We note immediately that section 877.13 does contain a specific scienter requirement that a person act "knowingly" to interfere or disrupt school functions or activities. Thus, the accused is not faced with the perils of strict criminal liability for an unintentional violation of this statute. M.C. argues nevertheless that this statute is still unconstitutionally vague because the terms "disrupt" and "interfere" are left undefined and the statute does not otherwise indicate whether any such "disruption" or "interference" is to be measured objectively or subjectively. As a result, M.C. asserts that law enforcement officials have been granted unfettered discretion in determining whether a school function or activity has been "interfered with" or "disrupted" by an accused. We disagree.
The state first of all correctly points out that the legislature's failure to specifically define "disrupt" or "interfere" in this penal statute does not automatically render it unconstitutionally vague. "In the absence of a statutory definition, resort may be had to case law or related statutory provisions which define the term, and where a statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense." See State v. Hagan, 387 So.2d 943, 945 (Fla.1980) (citations omitted); see also Zuckerman v. Alter, 615 So.2d 661, 663 (Fla.1993) (words of common usage, when employed in a statute should be construed in their plain and ordinary sense); Seaboard System R.R., Inc. v. Clemente, for and on Behalf of Metropolitan Dade County, 467 So.2d 348, 355 (Fla. 3d DCA 1985). In construing another penal statute, we have already determined that the plain and ordinary meaning of the word "interfere" means "[t]o come between so as to be a hindrance or obstacle; impede." See M.C. v. State, 614 So.2d 4 (Fla. 3d DCA 1993) (quoting American Heritage Dictionary 669 (2d College Ed.1985)). We find that the term "disrupt" is synonymous with "interfere" and its plain and ordinary meaning is "[t]o throw into confusion or disorder ... [t]o interrupt or impede the progress, movement, or procedure of ... [t]o break or burst; rupture." American Heritage Dictionary of the English Language 538 (3d ed.1992). Giving the terms in section 877.13 their plain and ordinary meaning, we conclude that this statute is not vague because it seeks to prohibit any conduct, acts, etc., which are specifically and intentionally designed to stop or temporarily impede the progress of any normal school function or activity occurring on the school's property.
M.C. attempts to analogize section 877.13 to the ordinance struck down for vagueness in Coates v. City of Cincinnati, which made it unlawful for "three or more persons to assemble" on public streets and then "conduct themselves in a manner annoying to persons passing by or occupants of adjacent buildings." 402 U.S. at 611, fn. 1, 91 S.Ct. at 1687, fn. 1. There, the Court found this ordinance to be unconstitutionally vague on its face in the absence of any standard of conduct and where it had the potential of punishing constitutionally protected conduct:
Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. As a result, `men of common intelligence must necessarily guess at its meaning.'
Id. at 614, 91 S.Ct. at 1688 (citation omitted). Essentially, the Court determined that a violation of this ordinance may depend entirely upon whether or not a policeman is annoyed. Id.
M.C.'s assertions to the contrary, we do not think that the same can be said of section *484 877.13. That is, we do not believe that a violation of this statute is largely dependent upon a determination by a law enforcement officer as to whether a school function has been halted or temporarily impeded. We think that the prohibited conduct or acts under this statute can be objectively measured against their effect or impact on the progress of the school's normalized functions.
M.C.'s intentional loud tirade and protests in the school's office clearly, amounted to prohibited conduct under section 877.13. There was unrefuted testimony that the secretaries and aides in the office were temporarily unable to perform their clerical duties because of the commotion caused by M.C. Similarly, the school police officer was temporarily drawn away from completing his arrest of M.C.'s brother. Still further, the students who joined M.C. in protest were temporarily distracted from their classes or other school activities. Because we think that M.C.'s activities were clearly proscribed by the statute, we conclude that her vagueness challenge must necessarily fail as well.
Thus, for all of these reasons, we affirm the order of delinquency under review.
Affirmed.
NOTES
[1] Among other things, M.C. screamed that the officer had no f______ right to touch her brother; the officer was going to do something to her brother because he was not a real f______ police officer and that the officer had better watch what the f___ he was doing with her brother.
[2] The record is inconclusive as to whether M.C. requested these other students to join her in her protest or whether they were simply drawn to her by her loud outcry.
[3] For example, the constantly ringing telephones in the office went unanswered.
[4] The rationale is evident: to sustain such a challenge, the complainant must prove that the enactment is vague `not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' Coates v. City of Cincinnati, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971)
[5] For example, the court pointed out that this portion of the statute would allow a conviction of a 100 year old woman sitting on school property at midnight, with no students present who tells a teacher that the quality of the teacher's work is poor. Or, a conviction could result from a person telling a band master after a parade, while not on school grounds but in the presence of students, that the band performed poorly due to the band master's inability to teach music. Id.