COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Chief Judge Decker, Judges Beales and Lorish
Argued by videoconference

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
v.      Record No. 1404-23-2          JUDGE RANDOLPH A. BEALES
MARCH 27, 2024

SEAN HOLMES, S/K/A
  SEAN JEFFERSON HOLMES

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Sarah L. Deneke, Judge

Jessica M. Bradley, Assistant Attorney General (Jason S. Miyares,
Attorney General, on briefs), for appellant.

Kelsey Bulger, Deputy Appellate Counsel (Virginia Indigent
Defense Commission, on brief), for appellee.

The circuit court declared Code § 37.2-429 unconstitutional on its face following a pretrial

motion by the defendant, Sean Holmes, to dismiss his criminal charge for disorderly conduct in a

hospital.  Pursuant to Code § 19.2-398, the Commonwealth appeals the circuit court's pretrial ruling

to this Court.

BACKGROUND

On February 8, 2023, Sean Holmes was issued a summons for disorderly conduct in

violation of Code § 37.2-429, which applies to hospitals and training centers.[1]  At trial before the

general district court, Holmes was found guilty and convicted.  He was sentenced to 30 days in

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] As defined in Code § 37.2-100, "'Training center' means a facility operated by the
Department [of Behavioral Health and Developmental Services] that provides training,
habilitation, or other individually focused supports to persons with intellectual disability."

jail with all 30 days suspended and was ordered to pay a $100 fine and $94 in court costs. Holmes appealed for a trial de novo before the circuit court. Before the trial, on July 17, 2023, Holmes filed in the circuit court a motion to declare Code § 37.2-429 unconstitutional and to dismiss the warrant against him. Holmes's motion did not provide a statement of facts. The Commonwealth filed a response defending the constitutionality of Code § 37.2-429. This response included a statement of facts which went unopposed. According to the Commonwealth's statement of facts, on February 8, 2023, Officer Zecher of the Fredericksburg Police Department responded to a call about a person who had fallen in a bathroom. The statement also proffers the following: when Officer Zecher arrived at the address, Holmes admitted to the officer that he was drunk when he fell; Holmes became loud and struck his sister in front of the officer; and EMS convinced Holmes to seek treatment at a hospital. The statement of facts further states, "Once at the hospital, after Ofc. Zecher attempted to leave the scene, the Defendant became disorderly, running down hallways and swinging his arms at hospital staff." Officer Zecher then arrested Holmes for the domestic assault against Holmes's sister, and later obtained a warrant against Holmes "for disorderly conduct on hospital grounds in violation of Virginia Code § 37.2-429 for his interference with the hospital staff."

On August 7, 2023, the circuit court heard oral argument on Holmes's pretrial motion to dismiss his Code § 37.2-429 charge. According to the record before this Court, the circuit court did not hear witness testimony and did not admit any evidence. After oral argument, the circuit court agreed with Holmes, declared the statute unconstitutional on its face, and dismissed Holmes's Code § 37.2-429 charge. In a very brief letter opinion, the circuit court explained, "While the objective [of the statute] is certainly valid, the lack of mens rea or intention renders the statute invalid." The circuit court concluded that "the language of § 37.2-429 cannot withstand a constitutional challenge for broadness and vagueness." However, it provided little

explanation as to why that was the case.[2]  The Commonwealth appealed the circuit court's

pretrial ruling to this Court.  A circuit court's decision declaring a statute unconstitutional on its

face is reviewed de novo.  *See Toghill v. Commonwealth*, 289 Va. 220, 227 (2015).

ANALYSIS

The Supreme Court of Virginia has clearly stated, "Facial challenges are disfavored"

because such constitutional challenges to a statute require courts to interpret the statute without

fully developing the facts of what happened in that specific case – and because "they invalidate

an entire law that was passed through the democratic process." *Id.* at 227-28 (citing *Washington*

*State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008)).  The Supreme

Court of the United States has similarly recognized that striking down a statute on its face and

"invalidating a law that in some of its applications is perfectly constitutional" has "obvious

harmful effects." *United States v. Williams*, 553 U.S. 285, 292 (2008).  Furthermore, the

Supreme Court of Virginia has made clear that trial courts and this Court are "required to resolve

any reasonable doubt concerning the constitutionality of a law in favor of its validity." *Tanner v.*

*City of Va. Beach*, 277 Va. 432, 438 (2009).

The statute at issue, Code § 37.2-429, states:

> It shall be unlawful for any person to conduct himself in an
> insulting or disorderly manner on the grounds of any hospital or

---

[2] The circuit court briefly stated that its decision "relies heavily" on *Squire v. Pace*, 380
F. Supp. 269 (W.D. Va. 1974), the only case it cited, which is a federal district court opinion that
dealt with a situation very different than the circumstances presented here.  The statute in the
*Squire* case applied in a location where citizens have high expectations for their free speech
rights, and it had no significant limiting context as the statute now before us does.  The statute in
that case prohibited behaving in a riotous or disorderly manner in any *public place* and
specifically excluded public conveyances where the government has a greater regulatory interest.
*Id.*  Of course, a person can expect his right to freedom of speech to be at its greatest height in
the public square.  Here, Code § 37.2-249 applies only to conduct that wrongly disrupts *hospitals*
and training centers.  A person has no right to organize a loud, boisterous march through the
rooms of a hospital, and the government has a compelling interest in maintaining an orderly and
calm environment in hospitals so that sick and frail patients can heal.  Consequently, the circuit
court's reliance on *Squire* is misplaced.

- 3 -

training center or in any way to resist or interfere with any officer or employee of any hospital or training center in discharge of his duty. Any person who conducts himself in an insulting or disorderly manner on the grounds of any hospital or training center or in any way resists or interferes with any officer or employee of any hospital or training center in discharge of his duty is guilty of a Class 1 misdemeanor.

Contrary to the circuit court's letter opinion in this case, a statute is not unconstitutional on its face merely because it does not have an explicit intent requirement in its text. As the U.S. Supreme Court clearly stated in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), courts interpret a statute to include a *mens rea* or intent requirement "even where 'the most grammatical reading of the statute' does not support one." *Id.* at 2197 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 70 (1994)). Likewise, in *Maye v. Commonwealth*, 213 Va. 48 (1972), the Supreme Court of Virginia also clearly stated, "A claim that a statute on its face contains no requirement of *mens rea* or *scienter* is no ground for holding the statute unconstitutional since such requirement will be read into the statute by the court when it appears the legislature implicitly intended that it must be proved." *Id.* at 49 (citing *Morissette v. United States*, 342 U.S. 246, 250 (1952)). Therefore, just as this Court has done for another statute (Code § 18.2-83), Code § 37.2-429 can and should be interpreted as requiring a criminal *mens rea*. *See Summerlin v. Commonwealth*, 37 Va. App. 288, 295-96 (2002); *Perkins v. Commonwealth*, 12 Va. App. 7, 15 (1991).

In *Summerlin*, this Court clarified that even though Code § 18.2-83 did not contain an explicit *mens rea*, to convict the defendant under that statute, the Commonwealth was required to prove that the defendant had a criminal *mens rea*. 37 Va. App. at 295-96 (concluding that proof "of Summerlin's *mens rea*, or unlawful intent, was required"). Applying the rationale from *Summerlin* and also applying the clear precedent from the U.S. Supreme Court and the Virginia Supreme Court, we conclude that a defendant cannot be convicted under Code § 37.2-429 unless

- 4 -

the Commonwealth provides proof that the defendant at least had some criminal *mens rea* or unlawful intent.[3] *See Rehaif*, 139 S. Ct. at 2197; *Maye*, 213 Va. at 49; *Summerlin,* 37 Va. App. at 295-96.  In short, because the lack of a *mens rea* in the text of a statute "is no ground for holding the statute unconstitutional since such requirement will be read into the statute," *Maye*, 213 Va. at 49, the circuit court here erred by ruling that "the lack of mens rea or intention renders the statute invalid."

Furthermore, we have not found adequate reasoning as to why, as the circuit court so conclusively stated, "the language of § 37.2-429 cannot withstand a constitutional challenge for broadness and vagueness."  The U.S. Supreme Court has explained that the overbreadth doctrine deals with statutes that threaten speech that is protected by the First Amendment.  *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003).  The function of a constitutional overbreadth analysis is to determine whether the amount of protected speech threatened by a statute is so substantial that, as a last resort to enable the free exchange of ideas, the reviewing court must strike down the statute as being unconstitutional on its face.  *United States v. Williams*, 553 U.S. 285, 292 (2008); *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999).  Holmes bore the burden to prove unconstitutional overbreadth here because he was the one asking the circuit court to strike down Code § 37.2-429 on its face.  *Hicks*, 539 U.S. at 122 ("The

---

[3] Even if a general criminal *mens rea* could not be read into Code § 37.2-429, another appropriate *mens rea* for Code § 37.2-429 can be found in Code § 18.2-415 – the statute prohibiting disorderly conduct in public places.  *See Stout v. Bartholomew*, 261 Va. 547, 555 (2001) ("[S]tatutes are not to be considered as isolated fragments of law, but as a whole, or as parts of . . . a single and complete statutory arrangement." (internal quotation marks omitted)).  If we were to apply that *mens rea* in Code § 18.2-415 to the statute now before this Court, a person would be guilty under Code § 37.2-429 only if he performs the prohibited conduct "with the intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof." *See* Code § 18.2-415.  However, we do not need to reach this additional ground because we are deciding this question on the narrowest and best ground.  *See Commonwealth v. White*, 293 Va. 411, 419 (2017) ("As we have often said, '[t]he doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available.'" (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).

overbreadth claimant bears the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists." (alteration in original)); *Muhammad v. Commonwealth*, 269 Va. 451, 497 (2005). An overbreadth analysis requires us to review what the statute legitimately regulates (i.e., its "plainly legitimate sweep"), and compare that to the amount of speech that the statute wrongly prohibits or threatens. *United States v. Hansen*, 599 U.S. 762, 781 (2023) (quoting *Williams*, 553 U.S. at 292). However, in conducting such an analysis, the U.S. Supreme Court has strongly cautioned courts and emphasized, "we have recognized that the overbreadth doctrine is strong medicine and have employed it with hesitation, and then only as a last resort." *L.A. Police Dep't*, 528 U.S. at 39 (internal quotation marks omitted).

Code § 37.2-429 has a compelling, legitimate purpose – to protect the ability of sick, seriously injured, and overall frail patients to heal in peace and with as little stress as is reasonably possible by preventing unnecessary disruptions in hospitals and training centers. The statute specifically addresses conduct – actions – and only the conduct that occurs at a hospital or training center. Within this setting, Code § 37.2-429 validly "encompasses a great deal of nonexpressive conduct," and the types of conduct that the statute prohibits demonstrates how this "legitimate sweep" serves the statute's purpose. *See Hansen*, 599 U.S. at 782. Patients' ability to be cared for, rest, heal, and try to find comfort is harmed when they are needlessly disturbed and upset by unnecessarily disruptive behavior and conduct performed in an insulting or disorderly manner in a hospital. In addition, patients suffer if hospital staff are needlessly interrupted, distracted, and prevented from carrying out their essential duties in treating their patients. Furthermore, people normally have limited access to hospitals. In fact, hospitals have their own land, facilities, and property that are not open to the public for just any purpose (even hospital facilities owned by government entities have their own property). Simply put, hospitals

are not open to the public in the same way as a park or city sidewalk. Hospitals are a special

place in our communities for the sick, injured, and infirm to be treated and to heal. *See, e.g.*,

*United States v. Fentress*, 241 F. Supp. 2d 526, 531 (D. Md.) ("The VA[ hospital]'s legitimate

interest in making a hospital a place of rest and healing will render a prohibition on 'loud,

boisterous, and unusual noise' which impedes the operation of the hospital reasonable in the vast

majority of situations."), *aff'd*, 69 Fed. Appx. 643 (4th Cir. 2003). Given a hospital's unique and

esteemed purpose, special statutory protections to preserve hospitals from disruptive behavior are

entirely appropriate, are indeed common sense, and are something that the people's elected

representatives are certainly within their rights to enact if they so choose – as the Virginia

General Assembly has chosen to do here. *See Rumsfeld v. Forum for Acad. & Institutional

Rights, Inc.*, 547 U.S. 47, 67-68 (2006).

Next, we must determine if the statute, Code § 37.2-429, actually prohibits or threatens

protected speech. If so, we would then assess whether the amount of that speech is substantial

compared to the statute's legitimate sweep, just described *supra*. To begin with, a statute

regulating behavior in the narrow setting of a hospital does not have to meet the high standards

that are necessary for a statute that regulates speech and expression in all places. A statute

regulating behavior does not run afoul of the First Amendment simply because part of the

behavior that it prohibits may end up including some expressive conduct that would otherwise be

unlawful for a state to set out to prohibit in and of itself. *Hansen*, 599 U.S. at 781-85; *Rumsfeld*,

547 U.S. at 67-68; *United States v. O'Brien*, 391 U.S. 367, 382 (1968). For example, the First

Amendment generally protects a person's right to engage in a loud, boisterous protest, to march

about doing so, and to wave placards and signs at passersby, including in a public park.

However, the First Amendment does not guarantee anyone the right to engage in that *manner* of

conduct by marching through the rooms of a *hospital*. *See O'Brien*, 391 U.S. at 382 (upholding

a conviction because, "[w]hen O'Brien deliberately rendered unavailable his registration certificate, he willfully frustrated this governmental interest. For this noncommunicative impact of his conduct, and for nothing else, he was convicted."). The government interest at stake here is preventing certain behavior that disrupts hospitals. To the extent Code § 37.2-429 affects any expression, it does so only incidentally to its clear, primary purpose of protecting the operations of hospitals from insulting and disorderly disruptions. *Texas v. Johnson*, 491 U.S. 397, 407 (1989) ("[W]e have recognized that where 'speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.'" (quoting *O'Brien*, 391 U.S. at 376)). As the Supreme Court stated in *Hansen*, "To the extent that [this statute] reaches *any* speech, it stretches no further than speech integral to unlawful conduct." *Hansen*, 599 U.S. at 783.

Prohibiting people from conducting themselves in an insulting or disorderly manner and resisting hospital staff on hospital grounds is an entirely reasonable regulation of behavior and conduct, and Code § 37.2-429 is not directed at suppressing any specific views or opinions that public officials might deem to be insulting. In fact, based on the clear language in the statute, it is not aimed at any views or the content of speech at all. The statute does not prohibit the expression of insulting views, disorderly views, or even medical views that oppose those of the hospital or its staff. Simply put, content of speech is not prohibited by the statute. Speech is only punishable under the statute if it is expressed through *conduct* that is executed in a manner that is insulting or disorderly – all while in the context of disrupting the operations of a *hospital* where sick and frail patients are trying to heal. *See Andrews v. Am. Health & Life Ins. Co.*, 236 Va. 221, 225 (1988) ("[T]he meaning of a word takes color and expression from the purport of the entire phrase of which it is a part, and it must be read in harmony with its context." (internal quotation marks

omitted)); *cf. Grayned v. City of Rockford*, 408 U.S. 104, 112 (1972) ("We do not have here a vague, general 'breach of the peace' ordinance, but a statute written specifically for the school context, where the prohibited disturbances are easily measured by their impact on the normal activities of the school."). As the U.S. Supreme Court has stated, "[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Hansen*, 599 U.S. at 783 (alteration in original) (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)).

In short, Code § 37.2-429 provides a reasonable prohibition against a person disrupting the operation of a hospital by conducting himself in an insulting or disorderly manner. Just as the U.S. Supreme Court cautioned about striking down the statute before it in its 2023 decision in *Hansen*, Holmes's motion to strike down Code § 37.2-429 on its face asks us to "throw out too much of the good based on a speculative shot at the bad. This is not the stuff of overbreadth—as-applied challenges can take it from here." *Id.* at 785.

Holmes's other challenge that Code § 37.2-429 is unconstitutionally vague also fails. As the Supreme Court of Virginia has stated, a person who claims that a statute is vague "can only mount a successful facial challenge to [that] statute by showing first that the statute in question is unconstitutional as applied to him and that the statute in question would not be constitutional in any context." *Toghill v. Commonwealth*, 289 Va. 220, 228 (2015) (citing *County Ct. of Ulster Cnty. v. Allen*, 442 U.S. 140, 154-55 (1979)). If a person fails to show that a statute is unconstitutionally vague as applied to him, "he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations." *Id.* (quoting *Allen*, 442 U.S. at 154-55). In other words, as the U.S. Supreme Court has consistently held, "[A] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the

- 9 -

law as applied to the conduct of others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)). Furthermore, this "rule makes no exception for conduct in the form of speech." *Id.*; *see Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 48 (2017). The U.S. Supreme Court has also noted that "when a statute interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Id.* at 19 (internal quotation marks omitted). However, the Court has clarified that "even to the extent a heightened vagueness standard applies, a plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim." *Id.* at 20; *see Schneiderman*, 581 U.S. at 48.

Here, the circuit court did not rule on whether Code § 37.2-429 was unconstitutionally vague as applied to Holmes's conduct in this case. In fact, there is no indication in the record that the circuit court even took testimony or admitted any evidence at all. The only indication here of what actually occurred is the Commonwealth's brief "Statement of Facts" in its response to Holmes's motion to dismiss the warrant. Even if we were to consider that proffered account, those facts do not demonstrate that Code § 37.2-429 is vague as applied to Holmes or even that the statute "interferes with the right of free speech." *Holder*, 561 U.S. at 19. As described by the Commonwealth, Holmes was arrested for disorderly conduct at a hospital after he had been "running down hallways and swinging his arms at hospital staff." Those facts alone would show that Holmes's conduct is clearly prohibited by Code § 37.2-429. Consequently, the circuit court erred by declaring Code § 37.2-429 unconstitutionally vague on its face before even determining what conduct by Holmes resulted in his arrest and whether that conduct was clearly prohibited by the statute. *See Schneiderman*, 581 U.S. at 48 (quoting *Holder*, 561 U.S. at 20); *see also Shin v. Commonwealth*, 294 Va. 517, 526 (2017).

Even if we do consider Holmes's premature facial vagueness challenge to this statute, Code § 37.2-429 is not unconstitutionally vague on its face. *See Grayned*, 408 U.S. at 121 (holding that an ordinance regulating behavior outside of schools was not overbroad or vague when its prohibition against some peaceful forms of picketing around the school was "a considered and specific legislative judgment" to protect schools). A key principle of due process is that a statute is void for vagueness under the Due Process Clause of the Fourteenth Amendment if it does not give a person fair notice of what conduct the statute prohibits. *See e.g.*, *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29 (1963). Members of the public are generally on notice that they must behave themselves in a hospital, where medical staff are rushing around attempting to do their best to treat sick or injured patients – and where patients are trying to rest and heal in as much peace as they can find in what is already a very busy, hectic place. *See Grayned*, 408 U.S. at 112 ("Given this particular context, the ordinance gives fair notice to those to whom [it] is directed." (internal quotation marks omitted)). Any person would reasonably understand that, in the specific and narrow setting of a hospital, he will be punished if he disrupts the hospital's operations by conducting himself in an insulting or disorderly manner or by resisting hospital staff such that the staff have more difficulty in discharging their duties. *See Maynard v. Cartwright*, 486 U.S. 356, 361 (1988) (holding that a statute is not vague "where reasonable persons would know that their conduct is at risk"). As the Supreme Court has long stated, "*every reasonable construction* must be resorted to, in order to save a statute from unconstitutionality." *Skilling v. United States*, 561 U.S. 358, 406 (2010) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)). It is certainly constitutional for the General Assembly to prohibit intentional, wrongful, and unnecessary disruptions in hospitals as Code § 37.2-429 does here.

The Supreme Court of Virginia has also clearly and repeatedly commanded, "Any reasonable doubt as to the constitutionality of a statute must be resolved in favor of its constitutionality, and '[o]nly where it is plainly in violation of the Constitution may the court so decide.'" *FFW Enters. v. Fairfax Cnty.*, 280 Va. 583, 590 (2010) (quoting *Almond v. Gilmer*, 188 Va. 822, 834 (1949)); *In re Phillips*, 265 Va. 81, 85-86 (2003) ("[W]e are *required* to resolve any reasonable doubt regarding the constitutionality of a statute in favor of its validity." (emphasis added)). Furthermore, the Supreme Court has clearly stated that "all acts of the General Assembly are presumed to be constitutional." *In re Phillips*, 265 Va. at 85. Indeed, "[t]here is no stronger presumption known to the law than that which is made by the courts with respect to the constitutionality of an act of Legislature." *FFW Enters*, 280 Va. at 590 (alteration in original) (quoting *Whitlock v. Hawkins*, 105 Va. 242, 248 (1906)). Finally, as the Supreme Court further stated in *Shin v. Commonwealth*, 294 Va. 517 (2017), "Facial challenges [to statutes] are disfavored because they create a risk of premature interpretation of statutes on the basis of factually barebones records." *Id.* at 526 (internal quotation marks omitted). Upon our review of this case, where Holmes claims that Code § 37.2-429 is unconstitutional on its face, we hold that Holmes has not shown that Code § 37.2-429 is unconstitutional.

## CONCLUSION

In short, hospitals are special facilities – with very special needs – as a place of healing, and specific protections against certain conduct in hospitals are therefore appropriate. Hospitals are not like a city or town sidewalk or park. No Virginia caselaw from this Court or the Supreme Court has ever held the use of the word "insulting" in a statute to be unconstitutional on its face. This Court today is not going to be the first to do so – especially when dealing with the General Assembly's prohibition against a "person conducting himself in an insulting or disorderly manner" in the setting of a hospital (or training center).

- 12 -

For all the foregoing reasons, the circuit court's ruling declaring Code § 37.2-429 to be unconstitutional on its face is reversed; its order dismissing the charge against Holmes under Code § 37.2-429 is vacated; and the case is remanded to the circuit court for further proceedings consistent with this opinion.

*Reversed, vacated, and remanded.*

Lorish, J., concurring in part, and dissenting in part.

Code § 37.2-429 makes it "unlawful for any person to conduct himself in an insulting or disorderly manner on the grounds of any hospital," and for anyone to "in any way resist or interfere with any officer or employee" of the hospital while "in discharge of his duty." It is constitutional for the General Assembly to prohibit certain expression in any setting. For example, the legislature may restrict obscenity, defamation, fighting words, incitement, and speech integral to criminal conduct, and not violate the First Amendment. Because Holmes brings a facial overbreadth challenge, we must evaluate whether the statute sweeps up a substantial amount of protected First Amendment expression in comparison to these types of unprotected expression that the statute may permissibly regulate. I would hold that most of the statute can be saved by narrowly construing certain language and finding that a criminal mens rea is implicit in the statute. But the statute's prohibition on "insulting" speech and conduct is unconstitutionally overbroad because it sweeps up a substantial amount of protected First Amendment expression. This would be true even if the statute applied only to government-owned hospitals, rather than applying to all hospitals and training centers in Virginia. I would therefore sever this unconstitutional portion from the statute, leaving the rest of the narrowed statute intact.

A. Framework for Overbreadth Challenges

When presented with a facial overbreadth challenge, we proceed by (1) "constru[ing] the challenged statute," (2) determining whether the statute (as construed) "criminalizes a substantial amount of protected expressive activity," and, if it does, (3) determining what remedy applies. *United States v. Williams*, 553 U.S. 285, 293, 297 (2008). "The overbreadth must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). In "ascertain[ing] whether the statute reaches

- 14 -

constitutionally protected speech . . . we consider the actual text of the statute as well as any limiting construction that may be placed on the statute." *Perkins v. Commonwealth*, 12 Va. App. 7, 13 (1991). We must "attribute to the General Assembly the intent to enact statutes that comply with the Constitution in every respect." *Kopalchick v. Catholic Diocese of Richmond*, 274 Va. 332, 340 (2007). Indeed, the presumption in favor of the validity of statutes is "one of the strongest known to the law." *Boyd v. Cnty. of Henrico*, 42 Va. App. 495, 507 (2004) (en banc) (quoting *Harrison v. Day*, 200 Va. 764, 770 (1959)).

In undertaking this analysis, a reviewing court must initially determine where the regulation applies, and what it covers. When a regulation broadly applies to speech and conduct that occurs anywhere, on both privately-owned and government property, courts apply the traditional First Amendment overbreadth analysis I have outlined above. By that, I mean that the government gets no special leeway or extra thumb on the scale in regulating speech and expressive conduct. *Cf. Jaynes v. Commonwealth*, 276 Va. 443, 460-64 (2008) (applying traditional overbreadth analysis to regulation that prohibited the transmission of unsolicited bulk emails and finding it overbroad); *Perkins*, 12 Va. App. at 10 (applying traditional overbreadth analysis to prohibition on using obscene, vulgar, profane, lewd, lascivious, or indecent language with the intent to coerce, intimidate, or harass and finding it was not constitutionally overbroad).

A seminal freedom of speech case, *Cohen v. California*, 403 U.S. 15 (1971), underscores this principle. The statute at issue prohibited "disturb[ing] the peace . . . by . . . offensive conduct," and was "applicable throughout the entire State." *Id.* at 16, 19 (alterations in original). Though Cohen wore a jacket displaying "Fuck the Draft" in a courtroom—a government-owned building where decorum might be expected—he could not be prosecuted because speech in a courtroom was protected absent a "showing of an intent to incite disobedience to or disruption of the draft," which falls into the narrow categories of speech that a government may regulate. *Id.*

at 18. Cohen brought an as-applied challenge, not a facial once, but that does not change the principle underlying the case—the government cannot criminalize protected speech and expression even in a courtroom. Or in a hospital.

My colleagues in the majority focus nearly exclusively on the legitimate purpose of Code § 37.2-429, which I agree is to protect the ability of sick and injured patients to heal in peace. I likewise agree that special protections to preserve hospitals from disruptive behavior are appropriate and within the purview of the General Assembly—but not if they sweep up a substantial amount of protected speech and expressive conduct along the way. Here is where the majority and I part ways doctrinally. The majority seems to equate the sweep of the statute with its purpose. But in an overbreadth challenge, we are not tasked with making a value judgment about whether the amount of protected speech that is suppressed is warranted by a worthy-enough legislative goal. Instead, we should look to whether a substantial amount of protected speech and expressive conduct "fall[] within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls *over harmful, constitutionally unprotected conduct*." *Broadrick*, 413 U.S. at 615 (emphasis added). The majority concludes that Code § 37.2-429 generally "encompasses a great deal of nonexpressive conduct," without ever looking at the specific prohibition on "conduct[ing] oneself in an insulting manner" and explaining how it can be interpreted to only substantially cover constitutionally *unprotected* insulting conduct. I discuss this more below.

I also disagree with my colleagues that "a statute regulating behavior in the narrow setting of a hospital does not have to meet the high standards that are necessary for a statute that regulates speech and expression in all places." It is true that there are sometimes different First Amendment standards that apply to regulations based on where they operate, but that is only when the government regulates speech and expressive conduct on *government property*. As I

explain in detail below, this statute applies to both government and non-government hospitals. When a regulation applies only to government property, the government may constitutionally prohibit more protected expression and reviewing courts engage in "forum analysis" to determine exactly how much more. *See Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 800 (1985) ("Recognizing that the Government . . . has power to preserve the property under its control for the use to which it is lawfully dedicated, the Court has adopted a forum analysis as a means of determining when the Government's interests in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes.").

Under this framework, "the extent to which the Government can control access depends on the nature of the relevant forum." *Id.* If the regulation applies to locations typically open to public speech, such as sidewalks, parks, and streets, the government must prove that a regulation in such a public forum is "necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). So long as the state can show that such a regulation is content-neutral, it may then enforce time, place, and manner restrictions so long as other channels of communication are left open and the regulation is "narrowly tailored to a significant government interest." *Id.* If, however, a statute regulates speech in a public space that is nevertheless a "nonpublic forum," the test is far less rigorous, permitting the government to regulate speech and expression so long as the regulation is reasonable and viewpoint-neutral. *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876 (2018). A nonpublic forum is any public property that "is not by tradition or designation a forum for public communication." *Id.* at 1885 (concluding polling places are nonpublic fora). *See also, e.g.*, *Perry Educ. Ass'n*, 460 U.S. at 45 (holding the mailing systems

in public schools are nonpublic fora); *Greer v. Spock*, 424 U.S. 828, 848 (1976) (concluding a military base is a nonpublic forum).[4]

After determining whether the statute applies broadly to public and private property, or only to government property, a reviewing court must examine whether the statute criminalizes speech or expressive conduct that would otherwise be protected under the First Amendment. Because the majority seems to suggest that all conduct deserves less protection than speech, I note here that the First Amendment applies to expressive conduct as much as it applies to traditional speech. *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2320 (2023) ("[T]he First Amendment extends to all persons engaged in expressive conduct . . . ."). Conduct is expressive when it evinces an "intent to convey a particularized message" and where "the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). If some "explanatory speech is necessary" to convey the intended message, the conduct does not warrant protection; otherwise a party "could always transform conduct into 'speech' simply by talking about it." *Rumsfeld v. F. Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 66 (2006).

There are certain categories of speech and expressive conduct that do not receive First Amendment protection, however. Provoking or inciting a breach of the peace falls outside the umbrella of First Amendment protection because such words or conduct have a nexus to

---

[4] The United States Supreme Court has also recognized a third class of forum—the limited public forum which includes government property that has been designated only for the discussion of certain subjects or that only particular groups may use. *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 390 (1993). While the government may be justified in reserving a limited public forum "for certain groups or for the discussion of certain topics," it "must respect the lawful boundaries it has itself set." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). Additionally, the government "may not exclude speech where its distinction is not reasonable in light of the purpose served by the forum" nor "discriminate against speech on the basis of its viewpoint." *Id.* (internal quotation marks and citations omitted).

- 18 -

violence. *See Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) ("[T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."). In addition, the First Amendment "guarantees have never been construed, however, to protect either criminal . . . or tortious conduct," thus "obscenity, "fighting words," and "defamatory words" all "remain outside the scope of constitutionally protected free speech." *Chaves v. Johnson*, 230 Va. 112, 122 (1985). Also, "[t]rue threats are among the certain categories of speech that a state may prohibit without violating the First Amendment." *Turner v. Commonwealth*, 67 Va. App. 46, 57 (2016). But each of these exceptions is "narrowly defined." *United States v. Bartow*, 997 F.3d 203, 207 (4th Cir. 2021).

B. Construing the Statute

The first step in an overbreadth analysis is to construe the statute. We proceed from the presumption that the General Assembly intended to pass constitutionally valid statutes, but we may only "constru[e] statutes to cure constitutional deficiencies . . . when such construction is reasonable." *Jaynes*, 276 Va. at 464. "A statute cannot be rewritten to bring it within constitutional requirements." *Id.*; *see also Reno v. American Civil Liberties Union*, 521 U.S. 844, 884 (1997) ("[T]his Court may impose a limiting construction on a statute only if it is 'readily susceptible' to such a construction."); *McKeithen Tr. of Craig E. Caldwell Tr. U/A Dated December 28, 2006 v. City of Richmond*, ___ Va. ___, ___ n.2 (Oct. 19, 2023) ("[A] court relying on [the constitutional avoidance] canon still must interpret the statute, not rewrite it." (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 385 (2018))). Accordingly, we must consider whether "there is any reasonable interpretation that conforms to the Constitution," *L.F. v. Breit*, 285 Va. 163, 180 (2013), and "resolve any reasonable doubt concerning the constitutionality of a

law in favor of its validity," *Tanner v. City of Va. Beach*, 277 Va. 432, 438 (2009). A narrowing construction can be applied only if it is "consistent with the legislative intent that we are able to determine from the words used by the General Assembly under the circumstances existing at the time [the relevant statute was] enacted or amended." *Virginia Soc. For Human Life, Inc. v. Caldwell*, 256 Va. 151, 157 (1998).

In *Jaynes*, for instance, our Supreme Court considered whether Code § 18.2-152.3:1, which criminalized using a computer or computer network to send "unsolicited bulk electronic mail," was substantially overbroad. 276 Va. at 461-63.[5] The Commonwealth proposed that, rather than declaring the statute unconstitutional in its entirety, the Court could instead apply a narrowing construction and declare that the statute does not apply to "unsolicited bulk non-commercial e-mail that does not involve criminal activity, defamation or obscene materials." *Id.* at 463. Acknowledging the importance of the constitutional avoidance doctrine and that the equivalent federal statute and those of many sister states explicitly contained this restriction, the Court nonetheless found that the construction the Commonwealth proposed was not reasonable because "[n]othing in the statute suggest[ed] the limited applications advanced by the Commonwealth." *Id.* at 464. The Court reasoned that to adopt the Commonwealth's proposed interpretation would be to rewrite that statute "in a material and substantive way" and "[s]uch a task lies within the province of the General Assembly, not the courts." *Id.* (citing *Jackson v.*

---

[5] The statute then covered

> [a]ny person who . . . uses a computer or computer network with the intent to falsify or forge electronic mail transmission information or other routing information in any manner in connection with the transmission of unsolicited bulk electronic mail through or into the computer network of an electronic mail service provider or its subscribers . . . .

Code § 18.2-152.3:1 (2003).

*Fidelity & Deposit Co.*, 269 Va. 303, 313 (2005) ("Where the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to the statute or alter its plain meaning.")).  This was true even though the Court observed that nothing suggested "unsolicited non-commercial bulk e-mails were the target of this legislation . . . or were otherwise a focus of the problem sought to be addressed by the General Assembly through its enactment" of the statute.  *Id.*  Ultimately, the text itself was too clear to allow for any judicially-added limitation to be reasonable.  *Id.*[6]

On the other hand, a narrowing construction is a permissible rewriting of a statute where it is permitted by the statute's text.  For example, a narrowing construction is allowed where the text arguably supports the construction because the narrowed language is an alternative definition of the words used in the statute.  *See, e.g.*, *United States v. Hansen*, 599 U.S. 762, 781 (2023) (adopting the "well-established legal definition" of statutory terms "encourages" and "induces" to narrow the statute); *United States v. Miselis*, 972 F.3d 518, 536 (4th Cir. 2020) (narrowing the meaning of "organize" based on "readily understood" definitions of the word which suggested the facilitation of violent action and not mere abstract advocacy of the same).  A court may also narrowly construe a statute where the text arguably supports the construction based on other language in the statute.  *See, e.g.*, *Perkins*, 12 Va. App. at 15 (interpreting a statute prohibiting the use of "obscene, vulgar, profane, lewd, lascivious, or indecent language" in light of another part of the statute which imposed a mens rea requirement); *Mercer v. Winston*, 214 Va. 281, 284 (1973) (applying statutory language "under circumstances reasonably

---

[6] Following this decision, the General Assembly amended and reenacted the relevant statutes clarifying, in relevant part, that the contested provision applied only to "unsolicited commercial electronic mail" but did "not include commercial electronic mail transmitted to a recipient with whom the sender has an existing business or personal relationship."  Code § 18.2-152.2.

- 21 -

calculated to provoke a breach of the peace" to narrow the meaning of "curse or abuse" and "use any violent abusive language" to apply only to "fighting words").

Then, there are limited circumstances where courts may rely on sources *outside* the text itself to support a narrowing construction. The first is where the text can, or must, be read in conjunction with other statutes in the same chapter or with statutes specifically cross-referenced by those statutes. *See, e.g.*, *L.F.*, 285 Va. at 163 (relying on an "explicit cross reference" to a different statute and construing the "linked statutes that address the same subject matter" to avoid a due process violation). A narrowing construction is also permissible where the text arguably supports the construction because legislative history or some other indicia of legislative intent or purpose support the interpretation. *See, e.g.*, *Caldwell*, 256 Va. at 157 (narrowing the recently amended statutory language "for the purpose of influencing the outcome of an election" by presuming the General Assembly knew about decisions from the United States Supreme Court and an Attorney General's opinion interpreting the same language to exclude groups engaging solely in issue advocacy).

Having established these principles for interpreting a statute, I now turn to the text here.

1. The regulation applies to both government-owned and privately-owned hospitals.

Code § 37.2-429 prohibits certain conduct "on the grounds of any hospital or training center." This statute is part of Title 37.2, which governs behavioral health and developmental services. Throughout this title, "hospital" is generally defined to include both a "state hospital" and "a licensed hospital." Code § 37.2-100. A "state hospital" is a "hospital, psychiatric institute, or other institution operated by the Department that provides care and treatment for persons with mental illness." *Id.* A "licensed hospital" is one "licensed pursuant to the provisions of this title." *Id.* In general, all inpatient hospitals and outpatient surgical hospitals operating in the Commonwealth, both public and private, are required to obtain a license to

provide health care services unless specifically exempted by Code § 32.1-124. *See* Code §§ 32.1-123 to 32.1-162.15:11.

Thus the statute applies to people in hospitals across the Commonwealth, whether they are privately owned, operated for-profit or not-for-profit, or operated by the Commonwealth. Because the regulation applies equally to all hospitals, I would employ a traditional overbreadth analysis to the statute to determine whether it complies with the First Amendment. Following this analysis, I find that only one part of the statute is unconstitutionally overbroad. For that part of the statute, I also then assume for the sake of argument that the statute could be read to apply only to government property.[7] Even analyzing this portion of the statute under the most generous level of scrutiny—that applying to a regulation in a nonpublic forum—I find this same portion of the statute would be unconstitutional because it discriminates based on viewpoint. Because I address the possibility that all hospitals in Virginia are in some way government property, and because a regulation that regulates speech or expressive conduct only on government property requires me to engage in forum analysis, I must construe the meaning of "grounds" to determine what kind of forum is at stake.

The statute regulates behavior that occurs "on the grounds of any hospital or training center." Assuming that hospitals are government-property, if "grounds" includes the sidewalks or streets in front of a hospital, that would mean the statute (at least partially) regulates actions in a traditional public forum. Whether "grounds" includes sidewalks is at least ambiguous. The dictionary definition of "grounds" is "the area around and belonging to a house or other building." *Webster's Third New International Dictionary* 1002 (2021). It adheres to this definition, and also a common sense understanding of what the grounds around a building might include, to apply a narrowing construction and interpret grounds to include the area around a

_____

[7] The parties have not briefed or argued that this is the case here.

- 23 -

hospital or training center up to but not including any public sidewalks or streets. Because "grounds" is "readily susceptible" to a more limited construction, *Reno*, 521 U.S. at 884, I would employ this narrowed interpretation so that I can demonstrate how under even the most permissive standard, the insulting conduct provision is unconstitutional.

> 2. "Resisting or interfering" is susceptible to a narrowing construction limited to physical actions.

The statute also prohibits someone from "in any way" "resist[ing] or interfere[ing] with any officer or employee of any hospital or training center in discharge of his duty." Code § 37.2-429. To "resist" is to "withstand the force or effect of," while to "interfere" is "to be in opposition: to run at cross purposes" or to "enter into or take part of the concerns of others." *Webster's*, *supra*, at 1178, 1932. While the plain meaning of "resist" and "interfere" could theoretically reach speech or conduct that intends to and is understood to convey a particularized message, the statute links these words to the officer or employee being in "discharge of his duty." Common sense tells us that it takes more than a verbal outburst to obstruct the operations of a hospital. It is more reasonable to understand "resisting" and "interfering" to be physical actions that prevent hospital employees from carrying out their duties. Thus, we can reasonably construe "resist" and "interfere" to apply only to physical conduct intended to interfere with hospital operations. This construction does not remove all protected conduct from the reach of the statute, but as set out below, it removes any substantial overbreadth which is our only concern when presented with a facial challenge.

> 3. The regulation on conducting oneself in a disorderly manner is susceptible to a narrowing construction that regulates only conduct with a nexus to imminent violence.

The word "disorderly" describes "[b]ehavior that tends to disturb the public peace, offend public morals, or undermine public safety." *Webster's*, *supra*, at 652. Long ago, our Supreme Court declined to narrowly construe the words "disorderly conduct" for purposes of the statute

- 24 -

generally criminalizing disorderly conduct[8] (rather than in the specific setting of a hospital). *See Hackney v. Commonwealth*, 186 Va. 888, 890 (1947) (defining "disorderly conduct" using the "usual definition of that term," which included 'all such acts and conduct as are of a nature to corrupt the public morals or to outrage the sense of public decency, whether committed by words or acts'"); *Taylor v. Commonwealth*, 187 Va. 214, 221 (1948) (finding that the same prohibition on "disorderly conduct" could be violated through words having "a vicious or injurious tendency, offensive to good morals or public decency"). Likewise, a 1968 opinion by the Attorney General explained that disorderly acts criminalized by the statute "would not necessarily constitute common law breach of peace," as there was no requirement that the forbidden acts give rise to "actual or threatened violence." Virginia Attorney General Reports and Opinions 56 (1968-69). Thus, under the Attorney General's opinion, the general disorderly conduct statute did not have a nexus to violence and thus it prohibited First Amendment protected speech and conduct.

A few years later, relying on our Supreme Court's refusal to limit "disorderly conduct," the Fourth Circuit ruled that the statute was unconstitutionally overbroad for this very reason. *Squire v. Pace*, 516 F.2d 240, 241 (4th Cir. 1975). The version of the statute then in place "could inhibit the exercise of first amendment rights because it has been construed to embrace speech, which, unaccompanied by acts, need do no more than outrage the sense of public decency." *Id.*[9] Following this decision, the General Assembly amended the statute—and specifically amended the definition of disorderly conduct—to add a nexus between the

---

[8] The version of the statute then in effect stated, "If any person behaves in a riotous or disorderly manner in any street, highway, public building, or any other public place . . . he shall be guilty of a misdemeanor." *Hackney*, 186 Va. at 890 (quoting chapter 296 of the Acts of 1946).

[9] Despite that disorderly conduct is necessarily focused on "conduct," this feature did not save it from First Amendment scrutiny.

prohibited conduct and violence.  Now, a "person is guilty of disorderly conduct," if, with the requisite intent,[10] the person "engages in conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed."  Code § 18.2-415; *see Brandenburg*, 395 U.S. at 447.

To allow Code § 37.2-429 to escape the same fate of the old disorderly conduct statute, we would need to narrowly construe disorderly conduct to have a nexus to violence.  That way, the statute would not cover any protected speech or expression.

While such a narrow construction is not readily apparent from the statutory text in isolation, I would find it is reasonable after applying the "common canon of statutory construction" which states that "when the legislature uses the same term in separate statutes, that term has the same meaning in each unless the General Assembly indicates to the contrary." *Commonwealth v. Jackson*, 276 Va. 184, 194 (2008).  The General Assembly amended Code § 37.2-429 in 1976 to remove language that previously criminalized the resisting of a hospital employee "whether on the grounds of the hospital or elsewhere in the Commonwealth."  In that same legislative session, the General Assembly amended the general disorderly conduct statute, now Code § 18.2-415, to specifically define disorderly conduct as "conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed."  Mindful of the admonition to adopt any constitutional reading of the statute that is reasonable, I would conclude that the General Assembly intended for this same definition to apply to Code § 37.2-429, where it used the same term.  *See Shepherd v. Conde*, 293 Va. 274, 285 (2017) (considering amendments made to another statute during the same legislative session

---

[10] The statute requires the conduct be intended "to cause public inconvenience, annoyance, or alarm, or recklessly creat[e] a risk thereof."  Code § 18.2-415.

- 26 -

in interpreting statutory language).  Given this narrow construction, the statute's prohibition on

disorderly conduct does not criminalize any expressive speech or conduct.

>    4. Conducting oneself in an insulting manner is not susceptible to a narrowing
>       construction.

Now, I turn to the word "insulting," and construe what it means to conduct oneself in an

"insulting manner" under the statute.  Without a statutory definition, I start (but do not end) with

a dictionary.  "Insulting" means "giving or intended to give offense, being or containing an

insult."  *Webster's*, *supra*, at 1173.  "Insult" is defined as "to treat with insolence, indignity, or

contempt by word or action."  *Id.*  Insulting is not a word with any other special or "well-

established legal meaning."  *See Hansen*, 599 U.S. at 781.[11]  An insult aims to "convey a

particularized message" of contempt.  *Johnson*, 491 U.S. at 404.  On the face of the statute,

conducting oneself in an "insulting manner" would include verbal insults.  Even if the statute

covered only insulting *actions*, an action intended to convey a particularized message of

contempt is very likely to be "understood by those who viewed it" as such a message.  *Id.*  Thus,

insulting conduct would be expressive conduct protected by the First Amendment.  *Id.*  No

"explanatory speech is necessary" to accompany an insulting action for the insulting message to

be received.  *See Rumsfeld*, 547 U.S. at 66.  Indeed, I cannot think of an example of knowing or

---

[11] The majority relies heavily on quotes taken from *Hansen*, a recent United States Supreme Court decision rejecting an overbreadth challenge to a law prohibiting "'encourag[ing] or induc[ing]' illegal immigration."  599 U.S. at 766 (alterations in original) (quoting 8 U.S.C. § 1324(a)(1)(A)(iv)).  But the only reason the Supreme Court could conclude that "[t]o the extent that [this statute] reaches *any* speech, it stretches no further than speech integral to unlawful conduct" is because the Court applied narrowing constructions to the words "encourage" or "induce" interpreting them as "terms of art" referring to criminal solicitation and facilitation instead of by their ordinary everyday meaning.  *Id.* at 771, 783.  Only with that narrow interpretation did the statute avoid picking up protected speech and expression.  The majority seeks the benefit of this holding without applying any limitation to the language in Code § 37.2-429.

reckless insulting conduct that would *not* be expressive, and I note that the majority has provided no examples either.

Our task is to determine whether we can narrowly construe conducting oneself in an insulting manner so that it does not cover protected speech, and if not, so that any restriction on protected speech is viewpoint neutral. Other courts have considered this question. For example, the New Hampshire Supreme Court applied a narrow construction to statutory language reading "No person shall address any offensive, derisive or annoying word to any other person who is lawfully in any street or public place." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 573 (1942). The United States Supreme Court agreed the statute as construed was constitutional because the construction had narrowed the statute to cover only "fighting words." *Id*. "Fighting words" are part of the "'narrowly limited [class] of speech'" falling outside of First Amendment protection because they are those "'which by their very utterance inflict injury or tend to incite an immediate breach of the peace.'" *Gooding v. Wilson*, 405 U.S. 518, 522 (1972) (quoting *Chaplinsky*, 315 U.S. at 571, 572).

Limiting this challenged portion of the statute to cover only fighting words was a reasonable construction given that prior caselaw had held that the "purpose [of the statute] was to preserve the public peace" and that "the direct tendency of such conduct . . . is to provoke the person against whom it is directed to acts of violence." *State v. Chaplinsky*, 18 A.2d 754, 758 (N.H. 1941) (quoting *State v. Brown*, 38 A. 731, 732 (N.H. 1894)). The prior case also noted that such offensive language, even if true, did not "destroy or lessen the tendency" to violence but "on the contrary, is liable to increase it by stimulating a spirit of revenge." *Brown*, 38 A. at 732. As a result, the New Hampshire Supreme Court adopted a reasonable construction because it was supported by indicia of legislative intent and purpose. *See Caldwell*, 256 Va. at 157.

But the uncontroverted purpose of this statute distinguishes this case from *Chaplinsky*. Nothing in the legislative purpose of Code § 37.2-429 suggests narrowly construing this language to include only "fighting words" is reasonable. As the majority notes, the "compelling, legitimate purpose" of the statute is "to protect the ability of sick, seriously injured, and overall frail patients to heal in peace and with as little stress as is reasonably possible by preventing unnecessary disruptions in hospitals and training centers." The purpose is not to prevent violence, but to prevent disturbance.[12]

Unlike in *Chaplinsky*, there are no indicia of legislative intent to preserve the public peace, or to prevent one's offensive language from provoking others to acts of violence here. Without such evidence of legislative intent, there is nothing intrinsic to "vulgar, *insulting*, and offensive" words that suggests the utterance of such words is "inherently likely to cause violence." *Hershfield v. Commonwealth*, 14 Va. App. 381, 386 (1992) (emphasis added).

An appellate court cannot usurp the role of the legislature and rewrite a statute unless it is already "reasonably susceptible" to such a limitation. *Reno*, 521 U.S. at 884. Here, the text does not support construing "conducting oneself in an insulting manner" to mean words and actions

---

[12] The out-of-jurisdiction cases cited by the Commonwealth reach similar conclusions about the purpose of various federal and state regulations concerning conduct in and outside of hospitals. Each case discusses the purpose of the statute as fulfilling the need to protect patients from "disturbance." *See Harmon v. City of Norman*, 61 F.4th 779, 791 (10th Cir. 2023) ("Noise control is particularly important around hospitals and medical facilities during surgery and recovery periods." (quoting *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 772 (1994))); *United States v. Fentress*, 241 F. Supp. 2d 526, 529-31 (D. Md. 2003) ("The VA's legitimate interest in making a hospital a place of rest and healing will render a prohibition on 'loud, boisterous, and unusual noise' which impedes the operation of the hospital reasonable in the vast majority of situations."); *United States v. Krahenbuhl*, No. 1:21-CR-0127, 2022 U.S. Dist. LEXIS 221205, at *21 (E.D. Wis. Dec. 7, 2022) ("While the rest of society may be required to tolerate such behavior in public fora, such as our streets and parks, the need to maintain peace and order in a non-public forum, such as a VA medical facility, outweighs the interest of individuals . . . in venting their anger in loud, profane and abusive language." (citation omitted)). None of the cases suggest that the respective legislatures were only concerned with preventing "fighting words" or violence.

which by their very nature "inflict injury or tend to incite an immediate breach of the peace." *Hershfield*, 14 Va. App. at 386. Nothing in Code § 37.2-429 suggests that the "insulting" conduct criminalized by the statute must be likely to induce others to violence, rather than distracting from hospital operations. Even if we were to read the phrase "resist or interfere with any officer or employee . . . in discharge of his duty" from the next sentence onto the word "insulting," merely resisting or interfering likewise does not reach the level of tending towards violence or breach of peace.

Another important reason I cannot so limit the statute is because it differs from Code § 8.01-45, often known as the "insulting words"[13] law. This provision of the Code specifically states that "all words shall be actionable which from their usual construction and common acceptance are construed as insults *and* tend to violence and breach of the peace." Code § 8.01-45. Notably, "insults" are not defined as words and actions that tend to violence and the breach of the peace in this other statute—to the contrary, the insulting words statute sets out a conjunctive test. The words must both be insulting *and* tend to violence to qualify. For this reason, even if we borrow the definition of "insulting" from this statute and slot it into Code § 37.2-429, we would not solve the constitutional problem.

There is, therefore, no way to narrowly interpret the "insulting manner" provision to conform to the Constitution without rewriting the statute, "a task [that] lies within the province of the General Assembly, not the courts." *Jaynes*, 276 Va. at 464. Thus, when Code § 37.2-429 criminalizes conducting oneself in an insulting manner, it includes speech and expression subject to First Amendment protection. That does not end the inquiry, however, as we must determine

---

[13] Code § 8.01-45 was enacted in 1810 "to discountenance and suppress duelling [sic] and other breaches of the peace." *W.T. Grant Co. v. Owens*, 149 Va. 906, 913 (1928).

- 30 -

below whether the amount of protected speech is substantial when compared to the statute's legitimate sweep.

C. As construed, only the "insulting manner" provision criminalizes a substantial amount of protected expressive activity.

The next step in our framework is to determine whether the statute as construed criminalizes a substantial amount of protected expressive activity "measured against the legitimate sweep of the statute." *Broadrick*, 413 U.S. at 601. A "statute must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression." *Gooding*, 405 U.S. at 522. As discussed above, there are three types of actions prohibited under Code § 37.2-429: disorderly conduct, resisting or interfering with hospital operations, and insulting conduct.

Given the narrow construction that reasonably applies to disorderly conduct, all of the speech and conduct prohibited by the first category is unprotected under the First Amendment. Because disorderly conduct should be understood as engaging "in conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed," such conduct has a nexus to violence and falls outside of constitutional protection. *See Brandenburg*, 395 U.S. at 447; *Chaplinsk*y, 315 U.S. at 573. Because no protected speech is swept up under this definition, I need not consider whether the amount of protected speech is substantial when compared to the legitimate scope of the statute.

Likewise, when narrowly construed, the prohibition on conducting oneself in a manner that resists or interferes with a hospital employee in the discharge of duty does not reach a substantial amount of protected speech. As outlined above, that language can be narrowly interpreted as covering only physical conduct intended to interfere with hospital operations. Some protected expressive conduct will fall under this definition. *See Johnson*, 491 U.S. at 404 (conduct is expressive when it intends to "convey a particularized message" and when the

- 31 -

"likelihood [is] great that the message would be understood by those who viewed it"). But most of the conduct will be non-expressive and is appropriate for government regulation.[14]

Finally, I look to the statute's prohibition on insulting conduct. As discussed above, I would find this means "giving or intended to give offense," or treating someone "with insolence, indignity, or contempt by word or action." Within the broad category of insulting conduct, there is a core of expression that the government may legitimately regulate. There could be insulting conduct in a hospital that amounts to fighting words, or the incitement of a breach of peace, or defamation. For example, a patient or visitor could make threatening gestures or utter a racial slur that would be "insulting" and fall outside of First Amendment protection. Each of these categories of speech and conduct are unprotected. But that small core of unprotected insulting speech conduct is surrounded by a sea of protected insults.

Nearly every way someone might conduct himself in an insulting manner in a hospital setting is protected by the First Amendment. For example, a doctor who called a hospital administrator incompetent, a guest who made fun of a nurse's outfit, and a patient commenting on the blandness of the hospital cafeteria's food could all qualify as having conducted themselves in an insulting manner. The Constitution also protects from prosecution patients who roll their eyes or make offensive gestures at an administrator, and hospital visitors who verbally disparage an orderly (in a non-threatening, non-harassing manner). There are countless ways to

---

[14] Other courts have reached a similar conclusion. *See, e.g.*, *McDermott v. Royal*, 613 F.3d 1192, 1194 (8th Cir. 2010) (where "resist" could be interpreted to cover only physical acts or fighting words statute prohibiting resisting or obstructing officers was not unconstitutionally overbroad); *Lawrence v. 48th Dist. Court*, 560 F.3d 475, 482 (6th Cir. 2009) (where ordinance could be understood as physical interference or resistance of a law enforcement officer it was not substantially overbroad); *State v. Krawsky*, 426 N.W.2d 875, 875-78 (Minn. 1988) (where "obstructs," "hinders," "prevents," and "interferes" could be interpreted to apply only to physical acts substantially frustrating or hindering an officer's performance of his duties no overbreadth problem); *State v. Bagley*, 474 N.W.2d 761, 764 (Wis. 1991) (interpreting "interfere" in light of "qualifying words" "obstruct" and "impede" to conclude the state was limited to "physical interference" and therefore excluded "protected speech from its prohibitions").

violate the statute that fall short of causing "an immediate, forceful and violent reaction by a reasonable person." *Martilla v. City of Lynchburg*, 33 Va. App. 592, 602 (2000).[15] As the Supreme Court has observed, "Although we appreciate the difficulties of drafting precise laws, we have repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them." *Houston v. Hill*, 482 U.S. 451, 465 (1987). *See also Johnson*, 491 U.S. at 414 ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.").

Because a substantial amount of protected speech is covered, I would find that the restriction on conducting oneself in an insulting manner is facially overbroad.

D. Even if this statute only applied to government property, the result would be the same because a restriction on insulting conduct is not viewpoint neutral.

While I think the statute here applies to all hospitals and training centers, including those operated by non-government entities, I briefly examine what the result would be if the licensing requirement means that all hospitals in Virginia should be understood as government property. In such a scenario, as explained above, I would find that "grounds" can be reasonably construed not to include public sidewalks or streets and therefore that Code § 37.2-429 applies only to a non-public forum.[16] While the government may regulate far more speech in a non-public form,

---

[15] Afterall, the defendant in *Martilla* no doubt conducted himself in an insulting manner by berating the law enforcement officers arresting him, calling officers "fucking pigs' and 'fucking joke'" and saying "they 'should be at a fucking donut shop.'" 33 Va. App. at 602. Nevertheless, this insulting conduct did not qualify as fighting words. And we observed that words must be continually evaluated in the era in which they are uttered and that society was much coarser in 2000 than it was in 1942.

[16] The Commonwealth relies heavily on federal cases evaluating 38 C.F.R. § 1.218(a)(5) which is similar, in some respects, to Code § 37.2-429. However, this is a clear example of the federal government regulating conduct on government property—Veterans Affairs hospitals. Thus, courts from other jurisdictions reviewing constitutional challenges to this federal regulation have undertaken forum analysis and readily concluded that VA hospitals are non-

"it is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995); *see also Perry Educ. Ass'n*, 460 U.S. at 57 (observing that "the First Amendment's central proscription against censorship, in the form of viewpoint discrimination" applies "in any forum, public or nonpublic"). "Discrimination against speech because of its message is presumed to be unconstitutional." *Rosenberger*, 515 U.S. at 828. To be sure, statutes that impose content-based restrictions in a non-public forum are constitutional only if they are "reasonable in light of the purpose served by the forum" and "viewpoint-neutral." *Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 189 (2007).

Putting this discussion in the context of overbreadth, in reviewing a facial overbreadth challenge to a statute that regulates in a nonpublic forum, a court must look at whether a substantial amount of protected speech is covered by the statute in comparison to the law's legitimate sweep. *Broadrick*, 413 U.S. at 615. There is no legitimate sweep where a statute discriminates based on viewpoint, however. *Iancu v. Brunetti*, 119 S. Ct. 2294, 2302 (2019).

The majority suggests the statute here would be viewpoint neutral because it is "not directed at suppressing any specific views or opinions that public officials might deem to be insulting." But it is not the case that as long as statutory language does not mention a viewpoint, it is automatically viewpoint neutral. Even where statutory language "evenhandedly prohibits disparagement of all groups," applying "equally to [trade]marks that damn Democrats and Republicans, capitalists and socialists and those arrayed on both sides of every possible issue," the United States Supreme Court has found that a restriction was not viewpoint neutral. *Matal v.*

---

public fora. *See, e.g.*, *Fentress*, 241 F. Supp. 2d at 531; *United States v. Krahenbuhl*, 88 F.4th 678, 683 (7th Cir. 2023); *United States v. Szabo*, 760 F.3d 997, 1002 (9th Cir. 2014). Only one of these cases took up a facial overbreadth challenge, but did not consider whether the regulation was viewpoint neutral and instead stopping the analysis after concluding the regulation had a reasonable purpose. *Fentress*, 241 F. Supp. 2d at 529-31.

*Tam*, 582 U.S. 218, 220, 243 (2017).  That is because, at core, "[g]iving offense is a viewpoint . . . . [T]he 'public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers.'"  *Id.* at 220 (quoting *Street v. New York*, 394 U.S. 576, 592 (1969)).

The problem with Code § 37.2-429 is that delivering an insult is a viewpoint, just like giving offense is a viewpoint.  Many other courts have applied similar reasoning.  For example, the Sixth Circuit found a policy that prohibited "antagonistic" and "abusive" speech "plainly fit in the broad scope of impermissible viewpoint discrimination" because the policy "prohibit[ed] speech purely because it disparages or offends."  *Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 894 (6th Cir. 2021).  Likewise, a restriction that required speech at school board meetings to be "respectful" constituted viewpoint discrimination.  *Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1349 (N.D. Ga. 2022).  So too were restrictions on the use of "abusive" and "offensive" comments.  *Marshall v. Amuso*, 571 F. Supp. 3d 412, 422 (E.D. Pa. 2021).  A restriction on vanity plates that were "offensive to good taste and decency," was also found not to be viewpoint neutral.  *Ogilvie v. Gordon*, 540 F. Supp. 3d 920, 927 (N.D. Cal. 2020).

Each of these cases also considered regulations of speech that applied outside the "public forum" context.  Many of these cases address restrictions in the school context, which is analogous in important ways to the hospital setting.  For example, in both contexts, there are heightened concerns about maintaining order and ensuring safety.  *See N.J. v. T. L. O.*, 469 U.S. 325, 341 (1985) (describing the "substantial need of teachers and administrators for freedom to maintain order in the schools").  But many courts (on top of several already listed above) have struck down comparable provisions in the school context.  *See West v. State,* 793 S.E.2d 57, 61 (Ga. 2016) (declaring unconstitutional a statute that prohibiting upbraiding, insulting, or abusing

- 35 -

teachers because "the statute neither ties the prohibited expression to the disruption of normal school activities nor limits the prohibitions to specific, fixed times, such as when school is in session" and is not confined to boisterous or disruptive speech, but also speech directed at public school officials which may be perceived as negative or unfavorable); *Shoemaker v. State*, 38 S.W.3d 350, 355 (Ark. 2001) ("[I]t is clear" that "the undefined terms 'abuse' and 'insult' could include protected speech" and that if the court were to read into the statute an implication that these words only referred to "fighting words" it "would clearly be legislating in order to save the statute."); *Ketchens v. Reiner*, 194 Cal. App. 3d 470, 479 (1987) (concluding that a prohibition on upbraiding, insulting, or abusing teachers could not be narrowed because the words covered many statements that would not be considered fighting words); *Commonwealth v. Ashcraft*, 691 S.W.2d 229, 232 (Ky. Ct. App. 1985) ("While 'fighting words' may not be protected, and while reasonable restrictions may be placed on protected speech, this statute [prohibiting the upbraiding, insulting, or abuse of teachers] is not 'narrowly tailored to further the state's interest' and we are not persuaded that this Court can so limit its application that it would withstand constitutional scrutiny."); *State v. Reyes*, 700 P.2d 1155, 1159 (Wash. 1985) (declining to interpret "insult" to only include "fighting words" because to do so would strain the meaning of the statute, as "[m]any insults . . . cannot be categorized as 'fighting words' because these insolent, contemptuous words are not inherently likely to lead to a breach of peace or a 'violent reaction'"); *McCall v. State*, 354 So. 2d 869, 872 (Fla. 1978) (finding that a prohibition on upbraiding, insulting, or abusing teachers was constitutional but severing it from the other provisions of the statute because those other provisions "require expressive activity designed to disturb the school atmosphere").

For these reasons, even if we find that Code § 37.2-429 applies to government property, such that the government may regulate more protected speech and conduct, the "insulting conduct" provision of the statute is unconstitutional because it is not viewpoint neutral.

E. The appropriate remedy is to sever the prohibition on insulting conduct from the statute and remand for trial in accordance with the revised statute.

Where a statute contains a provision that violates the Constitution, the reviewing court must determine the appropriate remedy. When a statute is not "readily susceptible" to a constitutional interpretation, this Court "will not rewrite [the] law to conform it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place." *United States v. Stevens*, 559 U.S. 460, 481 (2010) (internal citations and quotation marks omitted) (declaring a statute unconstitutional and striking it down in full); *see also Jaynes*, 276 Va. at 464 (declining to "rewrite" the statute "in a material and substantive way" because "[s]uch a task lies within the province of the General Assembly, not the courts").

Here, however, the proper remedy would be to sever the prohibition on "insulting" conduct from the statute and remand for trial in accordance with the revised statute. Code § 1-243 provides that: "The provisions of all acts, except for the title of the act, are severable unless (i) the act specifically provides that its provisions are not severable; or (ii) it is apparent that two or more acts or provisions must operate in accord with one another." Our Supreme Court has interpreted Code § 1-243 as "a rule for judicial construction of statutes." *Elliott v. Commonwealth*, 267 Va. 464, 472 (2004). The restriction on conducting oneself in an insulting manner is not inextricably intertwined with the rest of statute and can easily be severed. Moreover, as the majority emphasizes, there are strong policy reasons to prevent disruption in the hospital setting that make it essential that the constitutional aspects of the statute remain in effect. I can therefore comfortably conclude that the General Assembly would have wanted to

pass the rest of the statute without this portion. *See Miselis*, 972 F.3d at 518 (construing the statute and applying limited constructions to certain terms, then finding certain other terms were overbroad and swept up too much protected speech, and finding the remedy was to sever off the unconstitutional phrases from the statute); *Toghill v. Commonwealth*, 289 Va. 220, 234 (2015) (declaring a statute criminalizing sodomy "invalid to the extent its provisions apply to private, noncommercial and consensual sodomy involving only adults" and applying a severance remedy while retaining the rest of the statute given legislative intent to preserve rest of statute).

CONCLUSION

For these reasons, I agree with my colleagues in the majority that the circuit court erred by striking down the entire statute as overbroad and vague. Instead, I would strike only the prohibition on conducting oneself in an insulting manner from Code § 37.2-429 and remand for disposition under the revised statute.[17]

As for the facial vagueness challenge to the remaining portions of the statute, given the way I have construed these phrases, plus a criminal mens rea, I agree with the majority that members of public have fair notice of what the statute prohibits. I disagree, however, that facial vagueness challenges are generally impermissible, or that the circuit court prematurely resolved the facial vagueness challenge before trial. Even though a "plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others," the United States Supreme Court has "relaxed that requirement in the First Amendment context." *Williams*, 553 U.S. at 304 (quoting *Hoffman Estates v. Flipside*, 455 U.S.

---

[17] The status of this interim appeal brought under Code § 19.2-398 currently precludes our en banc Court, or the Virginia Supreme Court, from reviewing this decision on facial constitutionality. The same would not be true should the appellant be convicted and appeal from a final order, raising this issue again at that time.

489, 494-95 (1982)).[18]  For this reason, I do not join in the portion of the majority opinion that

appears to suggest a pre-trial vagueness challenge is premature.

---

[18] The cases the majority relies on all involve as-applied vagueness challenges or circumstances where the appellant conceded that his conduct was clearly covered by the statute. The majority does not explain how a defendant could show, pre-trial, that his conduct was not clearly proscribed by the statute when it is the burden of the Commonwealth to prove, at trial, that the defendant's conduct is covered by the statute.